481 A.2d 221

**John CRANFORD et al.**

v.

**MONTGOMERY COUNTY, Maryland et al.**

**No. 103, Sept. Term, 1983.**

Court of Appeals of Maryland.

Sept. 14, 1984.

760

L. Marc Zell, Bethesda (Topf, Zell, Kolodny & Novick, Bethesda, on brief), for appellants.

Clyde H. Sorrell, Senior Asst. County Atty., Rockville (Paul A. McGuckian, County Atty. and Robert G. Tobin, Jr., Deputy County Atty., Rockville, on brief), for appellees.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY and COUCH, JJ., and JAMES C. MORTON, Jr., and W. ALBERT MENCHINE, Associate Judges of the Court of Special Appeals (retired), Specially Assigned.

RODOWSKY, Judge.

This action is one to enforce the Public Information Act, Md.Code (1957, 1980 Repl.Vol., 1983 Cum.Supp.), Art. 76A, §§ 1–5A (the Md.Act). At issue are many documents which relate to a public construction project and which a public agency withheld when a newspaper requested production under the Md.Act. The circuit court and the intermediate appellate court approved nondisclosure in reliance on the exemption from production for agency memoranda set forth in § 3(b)(v) of the Md.Act. In our view there are deficiencies in the agency's proof. We shall remand pursuant to Maryland Rule 871 in order to have the substantial merits of the case determined in light of the principles hereinafter set forth.

The construction project around which this litigation centers is the Montgomery County Government Center consisting of a nine-story courthouse and a seventeen-story executive office building both of which rise from a multiple level parking structure. Government Center was designed as two separate projects by two architectural firms, but a single prime construction contract covering the work for the entire complex was awarded to Blake Construction Company (Blake). Work started in May of 1978.

Within the executive branch of Montgomery County, Maryland (the County) is a Department of Facilities and Services (DFS). One of the functions and responsibilities of

DFS is "[p]roject administration, design and supervision of construction of all new county buildings." Montgomery County Code (1972, 1977 Repl.Vol., 1982 Cum.Supp.), § 2–64G(a). The director of DFS is Thomas S. Abraham (Abraham). Within DFS is a section headed by Frederick P. Kranz (Kranz) and known as the Office of Architectural Services (OAS). While it is not completely clear in the record, we infer that OAS is or was sometimes called the Office of Design and Construction. Overall responsibility for project administration, design and supervision of construction of Government Center was in OAS. James A. Dove (Dove) and John D. McNickle (McNickle) are staff architects in OAS assigned to the Government Center project.

As early as January 9, 1979 Blake had claimed against the County for additional compensation. By the fall of 1979 construction was behind schedule. The County began discussions with a consultant, MDC Systems Corp. (MDC), which culminated in a contract dated March 31, 1980 between MDC and the County. Services to be rendered by MDC included schedule analysis, monthly schedule review and "claims prevention services." MDC agreed to "[s]erve as expert witness testifying in behalf of the County in court sessions, as required." By an amendment of March 11, 1981 MDC agreed to evaluate all change order claims and requests for time extensions and for delay costs. These evaluations were to be done "by professional engineers capable of testifying in behalf of the County as expert witnesses ...."

On May 8, 1981 a reporter and the editor of the Sentinel newspapers in writing asked Abraham to give them access to all documents relating to the Government Center construction project. Martin J. Hutt, Esq. (Hutt), an Assistant County Solicitor, was assigned to determine what material was exempt from disclosure under the Md.Act. He went through files at OAS for "several hours" and concluded that documents filling two five drawer file cabinets should be produced. He called out a variety of documents, num-

bering in excess of 130 and collectively measuring approximately three inches in thickness, each of which he deemed to be privileged in its entirety. When the County advised the newspaper that certain classes of documents were being withheld, its corporate publisher and its editor (the Petitioners) sued in the Circuit Court for Montgomery County.

Pertinent to the instant controversy are the following provisions of § 3 of the Md.Act:

(a) The custodian of any public records shall allow any person the right of inspection of such records or any portion thereof except on one or more of the following grounds or as provided in subsection (b) or (c) of this section:

(i) Such inspection would be contrary to any State statute;

(ii) Such inspection would be contrary to any federal statute or regulation issued thereunder having the force and effect of law;

(iii) Such inspection is prohibited by rules promulgated by the Court of Appeals, or by the order of any court of record; or

(iv) Such public records are privileged or confidential by law.

(b) The custodian may deny the right of inspection of the following records or appropriate portions thereof, unless otherwise provided by law, if disclosure to the applicant would be contrary to the public interest:

. . . .

(iii) The specific details of bona fide research projects being conducted by an institution of the State or a political subdivision, except that the name, title, expenditures, and the time when the final project summary shall be available;

. . . .

(v) Interagency or intraagency memorandums or letters which would not be available by law to a private party in litigation with the agency.

(c) The custodian shall deny the right of inspection of the following records or any portion thereof, unless otherwise provided by law:

. . . .

(v) Trade secrets, information privileged by law, and confidential commercial, financial, geological, or geophysical data furnished by or obtained from any person[.]

Responding by a letter of June 3, 1981 to Petitioners' request, the county attorney claimed that the withheld documents were exempt under subsections (a)(iii) and (iv), (b)(iii) and (v) and (c)(v). This letter divided the allegedly exempt records into five categories, namely:

(1) Intraagency memorandums from the staff of the Office of Design and Construction to Frederick Kranz and/or Thomas Abraham (Director of the Department of Facilities and Services).

(2) Interagency memorandums from the staff of Office of Design and Construction or Thomas Abraham to the Chief Administrative Officer and/or County Executive.

(3) Inspection reports of James Dove.

(4) Personal notes of John [McNickle].

(5) Consultant report prepared by MDC.

A show cause order was issued when Petitioners docketed their suit, to which the County responded by filing a memorandum of law. It relied almost entirely on the agency memoranda privilege of § 3(b)(v), but it did mention other provisions of the Md.Act. To the extent that category one of the June 3 letter embraced correspondence with the county attorney's office, the County asserted an attorney-client privilege, which was said to rest on § 3(a)(iv). A privilege for confidential commercial information customarily regarded as confidential in the construction industry was claimed in reliance on § 3(c)(v), but the agency did not specify any documents or category of documents as protected by that claimed privilege. The County also raised executive privilege, citing *Hamilton, Superintendent v. Verdow,* 287 Md. 544, 414 A.2d 914 (1980). Although Montgomery

County's memo said executive privilege "affords a broad immunity from disclosure of governmental documents, particularly those prepared for an executive officer," it did not particularly identify any documents to which application of that privilege was peculiarly suited. Finally, category five, described in the June 3 letter as the MDC report, was said to constitute bona fide research and to be exempt under § 3(b)(iii).

The case came on for trial on July 10, 1981 before Honorable John J. Mitchell.[1] In Public Information enforcement actions § 5(b)(1) provides that

> the court may examine the contents of the records in camera to determine whether the records or any part thereof may be withheld under any of the exemptions set forth in § 3, and the burden is on the defendant to sustain its action. In carrying this burden the defendant may submit to the court for review a memorandum justifying the withholding of the records.

The County's case before Judge Mitchell consisted of the MDC contract and testimony of Abraham, by stipulation, and of Hutt. By then Blake had presented a claim of $8.5 million against the County. The transcript of the stipulation reads that Abraham, who relied on Hutt to prepare the response, would have testified

> that as a matter of course the subordinate staff correspondence with only on the project and subordinate staff design and construction correspondence with their supervisor Fred [Kranz] the Director of Architectural [Services] [*sic*]. He would testify that he corresponds with the

---

1. It appears that the case was assigned for hearing on a motions calendar so that the hearing was administratively limited to a maximum of 30 minutes. In its brief in this Court, the County says that Petitioners arranged the hearing and that any deficiencies in the County's proof should be excused because of the limited time for a detailed presentation. The County, however, made no objection to the limited time and made no request for additional time. The County acquiesced in the procedure, and Petitioners are not estopped from asking this Court to subject the County's proof to the full legal standard of review.

chief administrative officers and county executives who are superiors. Last he would testify that it would be detrimental for the correspondence to be public information since it would have a chilling effect on open and frank discussions between subordinates and in the [formulation] of policy and would have a detrimental effect on the claim pending before Blake Construction Company.

Hutt testified in person and described the five categories as they are set forth in the June 3 letter. Those descriptions will be quoted later in this opinion. On matters of general application to documents in all categories, Hutt's evidence was as follows:

Q In these materials that you felt should not be disclosed, were any of these *purely* factual materials? [Emphasis added.]

A No. In fact because from the County Attorney's Office staffing I have been assigned to this project for the past two years. And so I have been privy to know that what is perceived by the County is not necessarily the same facts perceived by the consultant, architect, engineers or general contractor. These are merely questions or queries that have been raised to alert their supervisors as to why this is something that we should keep our eyes on in the future which will develop into something and to stay on top of it from the beginning.

Q Are there any policies or decisions contained in this material?

A No, I personally know from my position in the County Attorney's Office that neither Mr. [Kranz] or [McNickle] or Dove have decision making power, final power in the Department of Facility and Services or the County Government.

Hutt also said that, in making his decision, he considered the effect on the public interest that disclosure of a given document would have on the claim by Blake. Petitioners

presented no evidence and developed no additional facts on cross-examination.

On October 2, 1981 Judge Mitchell ordered that the documents be delivered to him for *in camera* inspection. The County produced the documents on October 21 and filed with the court clerk a ten-page memorandum listing the documents. However, because of a Sentinel editorial concerning an unrelated case, Judge Mitchell, by an order also filed on October 21, 1981, vacated his order for *in camera* inspection and recused himself.

The October 21, 1981 list divides the withheld documents into five categories, but those categories differ from the five categories used in the June 3 letter. Significantly, memoranda to the Chief Administrative Officer or County Executive do not comprise a specific category in the October 21 filing. The categories in that list are:

1.  A class which is uncaptioned by the County but which is generally described as the file of correspondence with, and of preliminary reports from, MDC;

2.  A class which is uncaptioned by the County but which is generally described as the file of handwritten notes made by the County's project architect during regular progress meetings;

3.  "INTRA OFFICE MEMOS";

4.  "DOVE REPORT"; and

5.  "MEETINGS WITH ARCHITECTS."

Under categories two through five, but not as to category one, the County identifies each document in some way, usually by date or author or both. In a number of instances, general descriptions of the contents of the document are also set forth. In the case of some documents, the County states why that particular document was withheld. Two of the sections of the memorandum close with reasons why all documents in that category have not been produced.

After Judge Mitchell withdrew, Judge Samuel W. Barrick presided over this case. Both parties orally presented legal arguments, but neither introduced any additional evidence.

In a written opinion of April 2, 1982, Judge Barrick describ-
ed the withheld documents as "attorneys' work product and
consultants' reports, progress meeting notes, inter-office
memorandums, inspection reports of James [Dove] and per-
sonal notes of John McNickle." He concluded that he need
make no *in camera* inspection because the County's testi-
mony supported application of the agency memoranda privi-
lege. Under the trial court's analysis, this put the burden
"upon the Plaintiff[s] to make a preliminary showing that
the communications or documents may not be exempted in
order to warrant an in camera inspection." No such show-
ing had been made. Consequently the circuit court ruled
that all documents withheld were exempt from disclosure.

The Court of Special Appeals affirmed. It agreed that
§ 3(b)(v) applied to all of the material in each of the with-
held documents. *Cranford v. Montgomery County*, 55
Md.App. 276, 462 A.2d 528 (1983). Set forth below is the
essence of that court's rationale (*id.* at 285–86, 462 A.2d at
534):

We hold that the appellees [*i.e.*, the County] adequately
met their burden of proving that the documents should
not be released. The appellees met this burden 1) by
presenting sufficient evidence showing that the withheld
documents fell within one of the enumerated exemptions
of the [Md.] Act and 2) by providing the court with
sufficient evidence from which it could reasonably con-
clude that disclosure of the documents would be contrary
to the public interest.... In this case, the public was
shown to have an interest in the efficient internal opera-
tion of the agency, and the agency showed that this
public interest could be harmed by the disclosure of
information pertinent to pending litigation.

. . . .

[I]n this matter, an absolute standard can be applied once
the agency has set forth unrebutted evidence that the
memoranda requested consist wholly of confidential opin-
ions, deliberations and recommendations of officials and
employees leading to the proper exercise of governmental

authority. The contents of such memoranda need not be disclosed if such disclosure would be contrary to the public interest.

The intermediate appellate court held that the question of *in camera* inspection rests in the broad discretion of the trial court. An inspection is or is not to be made depending upon whether the trial judge is " 'concerned that he is not prepared to make a responsible ... determination in the absence of *in camera* inspection ....' " *Id.* at 288, 462 A.2d at 535 (quoting *Ray v. Turner,* 587 F.2d 1187, 1195 (D.C.Cir.1978)).

We granted Petitioners' application for certiorari.[2]

Both parties predominately address the agency memoranda exemption in this Court. Petitioners assert that the Court of Special Appeals erroneously made a public interest standard control. As Petitioners see it, § 3(b)(v) looks to whether a document falls within all of the statute's terms. If a document does not, a public interest contrary to disclosure is irrelevant under that subsection. Petitioners attack the County's justification for applying § 3(b)(v) as being, variously, unsworn, general or conclusory. They also argue that an *in camera* inspection should have been conducted. On the other hand, the County says its testimony placed the withheld documents under the § 3(b)(v) exemption and, because that testimony was unrebutted, the case on appeal presents a question of fact which has been conclusively resolved by the trial court. The County also says that, by not proceeding on affidavit but by its having presented a live witness who could have been cross-examined, its proof need not be as particular as proof presented exclusively by affidavit. Both parties quote liberally from cases dealing with the privilege for agency memoranda recognized in the federal Freedom of Information Act (FOIA), 5 U.S.C.

---

2. There was no cross-petition by the County. Consequently, we do not have before us the additional issue which the County briefed in this Court, namely, that rules relating to administrative appeals and not Art. 76A, § 5 governed this suit in the circuit court.

§ 552(b)(5) (1982). None of the cited cases involves a building construction contract controversy. Each party then applies the general principles in FOIA cases to all of the documents at issue here, treating them as a whole.

This case cannot be dispatched so simply. Our first task, addressed in Part I of this opinion, is to fathom what the agency memoranda privilege of § 3(b)(v) in general means.[3] In Part II we face the problem of how a court procedurally approaches determining whether a statutory exemption has been properly invoked by an agency. Based on that review we frame in Part III the issue to be decided and state some general conclusions about this case. In Part IV and its subdivisions we apply or illustrate application of the operative rules within the categories into which the County's memorandum divided the unproduced records. Part V deals with residual arguments.

## I

Without doubt the bias of the Md.Act is toward disclosure. "All public records shall be open for inspection by any person at reasonable times, except as provided in this article or as otherwise provided by law." § 2(a). The custodian who withholds public documents carries the burden of justifying nondisclosure. § 5(b)(1). This policy is imbued in the § 3(b)(v) exemption. It contains three elements.

"The custodian may deny the right of inspection" to
    1. "Interagency or intraagency memorandums or letters"

---

**3.** Petitioners do not contend that § 3(b)(v) cannot apply to documents which were generated after the award of the construction contract and during the period of performance because, with respect to the Government Center project, the County is in much the same position as a private party owner would be. No one in the instant matter has questioned whether decisions made or to be made by the County concerning matters such as requests for progress payments, change orders, additional compensation or extensions of time are the kinds of decisions which the § 3(b)(v) privilege is designed to protect.

2. "which would not be available by law to a private party in litigation with the agency"

3. "if disclosure to the applicant would be contrary to the public interest."

The first two elements are present in the comparable provision of FOIA. Title 5, U.S.C. § 552(b)(5), sometimes called Exemption 5, applies to

inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency[.]

The second element restricts the exemption. A document may be an agency memorandum but, if it is available by law to a private party in litigation with the agency, it is to be produced. The third element is a further restriction. Although a document meets the first two requirements, withholding it might serve no public interest so that it is to be produced. For example, the document may relate to agency action taken so long ago that disclosing it no longer makes any difference.

### A.

Moving from the relationship between the elements, we turn to the meaning of the elements themselves and to the question of what agency "memorandums" are. Cases decided under FOIA § (b)(5) indicate that the agency memoranda exemption embraces various privileges. The broadest of these, and the one with which we are primarily concerned here, travels under a number of names, including "deliberative process," "executive," "pre-decisional" and "staff" privilege.

■ FOIA's Exemption 5 was involved in *EPA v. Mink*, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973) where the request was for release of nine documents submitting to the President of the United States the views and recommendations of agencies and individuals concerning a scheduled underground nuclear test. An affidavit by the Under Secretary of State established the foregoing facts. In describ-

ing this exemption the Court quoted from S.Rep. No. 813, 89th Cong., 1st Sess. 9 (1965) (*id.* at 87, 93 S.Ct. at 836, 35 L.Ed.2d at 132):

"It was pointed out in the comments of many of the agencies that it would be impossible to have any frank discussion of legal or policy matters in writing if all such writings were to be subjected to public scrutiny. It was argued, and with merit, that efficiency of Government would be greatly hampered if, with respect to legal and policy matters, all Government agencies were prematurely forced to 'operate in a fish bowl.' The committee is convinced of the merits of this general proposition, but it has attempted to delimit the exception as narrowly as consistent with efficient Government operation."

In *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29, 47 (1975) the Court pointed out that "[t]he cases uniformly rest the [FOIA § (b)(5)] privilege on the policy of protecting the 'decision making processes of government agencies' ... and focus on documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" (Citations omitted). Essentially the same policy underlies the executive privilege of Maryland evidence law which Judge Eldridge articulated for this Court in *Hamilton, supra*, 287 Md. 544, 414 A.2d 914. Documents to which that privilege applies are agency "memorandums" within the meaning of § 3(b)(v) of the Md.Act.

By analogy to FOIA, § 3(b)(v) also includes the attorney work product privilege. *See FTC v. Grolier Inc.*, 462 U.S. 19, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983) (privilege continues for FOIA purposes after litigation ends); *Federal Open Market Committee v. Merrill*, 443 U.S. 340, 355, 99 S.Ct. 2800, 2809, 61 L.Ed.2d 587, 600 (1979); *NLRB v. Sears, Roebuck & Co., supra* (memoranda of NLRB General Counsel to Regional Directors directing filing of unfair labor practice complaints excepted by Exemption 5). *Merrill* held that FOIA Exemption 5, depending on a factual record to be

made on remand, could also include a statutorily created committee's monetary policy directives which might be eligible for a limited form of protection from disclosure for confidential commercial information.

Because the executive privilege aspect of the agency memoranda exemption is designed to protect recommendations in the decision-making process, factual matters are not within that exemption. *See EPA v. Mink, supra,* 410 U.S. at 89–91, 93 S.Ct. at 837–38, 35 L.Ed.2d at 133–34; *Hamilton, supra,* 287 Md. at 564, 414 A.2d at 925. Rarely, however, will a given document reflect purely deliberative or policy-making processes without factual matters. In such instances FOIA applies a severability approach. The Court in *EPA v. Mink, supra,* 410 U.S. at 91, 93 S.Ct. at 838, 35 L.Ed.2d at 135, explained:

> Exemption 5 contemplates that the public's access to internal memoranda will be governed by the same flexible, common-sense approach that has long governed private parties' discovery of such documents involved in litigation with Government agencies. And, as noted, that approach extended and continues to extend to the discovery of purely factual material appearing in those documents in a form that is severable without compromising the private remainder of the documents.

The Md.Act similarly requires agencies to utilize the principle of severability in responding to requests for public records. Section 3(d)(4) provides that "any reasonably severable portion of a record shall be provided to any person requesting such record after deletion of those portions which may be withheld from disclosure."

### B.

The second element of the agency memoranda exemption under § 3(b)(v) of the Md.Act, *i.e.,* whether a memorandum "would not be available by law to a private party in litigation with the agency," presents still further questions. Among these are what type of litigation with the agency is

the court to assume and who is plaintiff or defendant in that hypothetical litigation. In the instant case the analogy is clearly to a suit by Blake against Montgomery County claiming the value of extra work and delay damages. This is implicit in the County's position that it met the public interest element of the exemption in large part by its need to avoid making available to Blake County deliberations and work product.

Another aspect of the statutory directive to consider discovery in hypothetical litigation involves what facts, if any, a court should assume to be the circumstances out of which the discovery request arises. Federal courts in Exemption 5 cases have determined that materials which would be *routinely* or *normally* discoverable fall outside of the FOIA exclusion. Need on the part of the requesting party is not to be assumed or considered in determining the outcome of the discovery analogy element of the agency memoranda exemption. *See FTC v. Grolier Inc., supra,* 462 U.S. at ——, 103 S.Ct. at 2214, 76 L.Ed.2d at 393–94; *Federal Open Market Committee v. Merrill, supra,* 443 U.S. at 362–63, 99 S.Ct. at 2813, 61 L.Ed.2d at 604; *NLRB v. Sears, Roebuck & Co., supra,* 421 U.S. at 149 n. 16, 95 S.Ct. at 1515–16 n. 16, 44 L.Ed.2d at 46 n. 16; *EPA v. Mink, supra,* 410 U.S. at 92, 93 S.Ct. at 838, 35 L.Ed.2d at 135; *Hoover v. United States Dep't of the Interior,* 611 F.2d 1132, 1138–39 (5th Cir.1980); *Deering Milliken, Inc. v. Irving,* 548 F.2d 1131, 1137 (4th Cir.1977). These principles are equally applicable under the Md.Act.

■ Ordinarily a court will apply the discovery element of § 3(b)(v) by looking to Title 2, Ch. 400 of the Maryland Rules of Procedure. Md.R. 2–402(c) in relevant part provides that

a party may obtain discovery of documents ... prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including an attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that ... the party

seeking discovery has substantial need for the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Subject to certain exceptions therein provided, MD.R. 2–402(c) requires a showing of substantial need for the discovery of work product materials. Thus, for purposes of applying § 3(b)(v) of the Md.Act, such materials are not "routinely" discoverable and are "not available by law to a party in litigation with the agency."

### C.

In cases in which the custodian invokes the agency memoranda exemption, and in which the trial court has determined that one of the privileges embraced within that exemption applies, the third element of § 3(b)(v) will typically be satisfied, namely, disclosure to the applicant would be contrary to the public interest. There is a public interest which underlies each legally recognized privilege and, if the privilege applies, it would be at best difficult to say that an agency decision to withhold was contrary to the public interest.

The foregoing analysis means that a public record does not enjoy § 3(b)(v) exempt status simply because it would be contrary to the public interest to disclose it. In the unusual case where a public policy factor should control but none of the specific exemptions applies, the Md.Act provides for a special procedure to safeguard the material from disclosure. Under § 3(e) a custodian may apply to a court for an order permitting him to deny disclosure in order to prevent substantial injury to the public interest.[4] Mont-

---

**4.** Section 3(e) of the Md.Act reads:

(e) If, in the opinion of the official custodian of any public record which is otherwise required to be disclosed under this article, disclosure of the contents of said record would do substantial injury to the public interest, the official custodian may temporarily deny disclosure pending a court determination of whether disclosure would do substantial injury to the public interest provided that, within ten working

gomery County did not attempt to use that procedure in this case.

## II

Cases like the one at hand also present a procedural problem similar to one encountered in applying court rules dealing with discovery in litigation. On one side a member of the public requests agency records as a matter of statutory right. On the other side a custodian denies production on the ground that the material is exempted from disclosure by the same statute. The person seeking disclosure is not always willing to accept that the custodian has correctly applied the claimed exemption. If withheld documents are routinely dumped on the trial courts for *in camera* inspection in order to resolve the dispute, undesirable results follow.

The Md.Act imposes the burden on the records custodian to make a careful and thoughtful examination of each document which fairly falls within the scope of the request in order for the custodian initially to determine whether the document or any severable portion of the document meets all of the elements of an exemption. The General Assembly did not intend for custodians broadly to claim exemptions and thereby routinely to pass to the courts the task of performing *in camera* inspections. To inhibit uncritical claims of exemption the General Assembly provided in § 5(b)(6) that

---

days of the denial the official custodian applies to the circuit court of the county where the record is located or where he maintains his principal office for an order permitting him to continue to deny or restrict such disclosure. The failure of the official custodian to apply for a court determination following a temporary denial of inspection will result in his becoming subject to the sanctions provided in this article for failure to disclose authorized public records required to be disclosed. After hearing, the court may issue such an order upon a finding that disclosure would cause substantial injury to the public interest. The person seeking permission to examine the record shall have notice of the application sent to the circuit court served upon him in the manner provided for service of process by the Maryland Rules of Procedure and shall have the right to appear and be heard.

[t]he court may assess against any defendant governmental entity or entities reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the court determines that the applicant has substantially prevailed.

One appropriate approach in these cases was outlined by the United States Court of Appeals for the District of Columbia Circuit in *Vaughn v. Rosen,* 484 F.2d 820 (D.C. Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). There the Bureau of Personnel Management Evaluation of the Civil Service Commission was asked to produce evaluations of certain federal agencies' personnel management programs. The custodian raised the agency memoranda exemption in an affidavit which set forth in conclusory terms the custodian's opinion that the evaluations were not subject to disclosure under FOIA. After making an excellent review of the problems inherent in an adversary proceeding where the custodian has knowledge of the facts while the party requesting disclosure does not, the *Vaughn* court laid down certain procedures for testing claims to exemptions under FOIA. Because "courts will simply no longer accept conclusory and generalized allegations of exemptions," the first burden on an agency which seeks judicial approval of a claim of exemption is to provide "a relatively detailed analysis in manageable segments." *Id.* at 826. This emphasis on an explanation which presents enough detail to make understandable the issues involved in the claim of exemption without presenting so much detail as to compromise the privileged material is repeatedly reflected in the federal cases. *See, e.g., Parton v. United States Dep't of Justice,* 727 F.2d 774, 776 (8th Cir.1984); *J.P. Stevens & Co., Inc. v. Perry,* 710 F.2d 136, 138 (4th Cir.1983); *White v. IRS,* 707 F.2d 897, 899 (6th Cir.1983); *Pollard v. FBI,* 705 F.2d 1151, 1153 (9th Cir. 1983); *Ingle v. Dep't of Justice,* 698 F.2d 259, 263 (6th Cir.1983); *Binion v. United States Dep't of Justice,* 695 F.2d 1189, 1193 (9th Cir.1983); *Stein v. Dep't of Justice & FBI,* 662 F.2d 1245, 1253 (7th Cir.1981); *Lame v. United*

*States Dep't of Justice,* 654 F.2d 917, 921 (3d Cir.1981); *Stephenson v. IRS,* 629 F.2d 1140, 1144–45 (5th Cir.1980); *Church of Scientology, Etc. v. United States Dep't of Army,* 611 F.2d 738, 742 (9th Cir.1980); *Gerash v. Smith,* 580 F.Supp. 808, 809 (D.Colo.1984); *Donovan v. FBI,* 579 F.Supp. 1111, 1113–14 n. 2, 1125–26 (S.D.N.Y.1983); *Benford v. American Broadcasting Companies,* 565 F.Supp. 139, 141 (D.Md.1983); *Hydron Laboratories, Inc. v. EPA,* 560 F.Supp. 718, 721 (D.R.I.1983). And *see* S. Stone & R. Liebman, *Testimonial Privileges* § 9.10, at 515 (1983). At the level of state government where one would not expect to encounter sensitive national security documents, the agency involved ordinarily should be able, without disclosing privileged information, to present a sufficiently detailed description and explanation to enable the trial court to rule whether a given document, or portion thereof, is exempt without the necessity of an *in camera* inspection.

■■■ We agree with the Court of Special Appeals that the ultimate standard under the Md.Act for determining whether an *in camera* inspection is to be made is whether the trial judge believes that it is needed in order to make a responsible determination on claims of exemptions. *See Ray v. Turner, supra,* 587 F.2d at 1195. Chief Judge J. Skelly Wright on behalf of the United States Court of Appeals for the District of Columbia Circuit in *Allen v. CIA,* 636 F.2d 1287 (D.C.Cir.1980) has listed a number of factors which may be involved in such a decision. These are judicial economy, the conclusory nature of the agency affidavits, bad faith on the part of the agency, disputes concerning the contents of the document, whether the agency has proposed *in camera* inspection and the strength of the public interest in disclosure. *Id.* at 1298–99. Particularly relevant here are judicial economy and the conclusory nature of the agency showing. Where the withheld documents are voluminous, it is understandable for a trial court to be reluctant to conduct an *in camera* inspection, and judicial economy would support directing the agency to furnish such further affidavits, indices, tables, summaries,

and cross references as the trial judge believes will be of help to him. Conversely, the number and subject matter of the documents may be such that an *in camera* inspection will involve far less time than would be expended in the presentation and evaluation of further evidence. If a detailed description cannot be given in affidavits without revealing the very information sought to be protected, there is strong reason for conducting an *in camera* inspection. If an agency has frustrated judicial review by presenting testimony or affidavits in conclusory form, the trial court may, depending upon all of the circumstances, appropriately exercise its discretion by ordering more detailed affidavits or by conducting an *in camera* inspection or simply by ordering disclosure because of the agency's failure to meet its burden of satisfying the court that an exemption applies.

### III

The foregoing review of some of the judicial rules would have been formulated in cases of this type is by no means exhaustive. Nevertheless, it serves to highlight certain deficiencies in the proceedings in this case. In particular, the presentation made by Montgomery County before Judge Mitchell is simply too general and conclusory, standing alone, to meet the County's burden of proof. The issue then becomes whether the County's October 21 memorandum in conjunction with the testimony satisfy the County's burden.

■ By considering the October 21 listing memorandum as part of the County's presentation, we reject Petitioners' argument that the memorandum is inadmissible because it is unsworn. In § 5(b)(1) the Md.Act specifically authorizes the custodian "[i]n carrying this burden" to submit a memorandum justifying the withholding.

Another hurdle which the County has not cleared is the severability principle. We do not encroach on the trial court's domain as fact finder by observing that it is unlikely that over 130 documents in the files of OAS are so inex-

tricably devoted to predecisional deliberations that no severable factual material is present in any of them. The October 21 listing, as discussed *infra,* strongly suggests that the County would withhold a document in its entirety if the County concluded that any portion of it was in the agency memoranda exemption. Reinforcing this conclusion is Hutt's testimony that no withheld document was "purely" factual.

■ Further deficiencies in this case were the failure of the courts below to analyze the agency memoranda exemption in relation to discoverability of particular documents with a resulting emphasis, particularly by the Court of Special Appeals, on a public policy justification for nondisclosure. Of course, those courts faced the problem that the County's descriptions and reasons frequently were too general to permit judicial analysis. Phrased another way, those courts, by accepting generalized evidence to prove the § 3(b)(v) exemption, applied the exemption too broadly.

Contrary to the County's argument, it has not compensated for the insufficiency of its demonstration of exemption by presenting Hutt (or Abraham) for cross-examination by Petitioners. Because generalities and conclusory testimony that one or more exemptions apply do not satisfy the burden to explain the withholding of documents, the County's argument is at bottom an attempt to shift the burden of proof in violation of the Md.Act.

For these reasons the judgments of the courts below cannot stand. Rather than reverse, however, we shall vacate and remand under MD.R. 871. If the circuit court should, in its discretion, order a more complete factual development by the County, or make an *in camera* inspection, it may appear that some of the documents are indeed exempt. Because the trial court erroneously viewed the County's presentation as having established exemption across the board, that court never decided whether or not to exercise discretion. Were we to reverse and mandate production on the ground of a failure of proof when a more

fully developed record might well support application of an exemption to one or more of the documents or parts thereof, the public policy underlying that exemption would not be served.

We shall now demonstrate from a review of the record on appeal why we have reached the foregoing conclusions.

## IV

### A.

The County's first category is a file relating to MDC. As to this category the October 21 memorandum reads in full:

> File No. 26 which is labeled Government Center Correspondence Meetings—CPM Consultant (MDC)—MDC Systems consists of correspondence and preliminary reports provided by the claims consultant to the County to help it in the evaluation of the Blake Construction Company's claims for additional costs for extra work and delay claims. This file was denied to the Sentinel Newspapers because *it is in part attorney work product* and secondly it would not be in the public's interest to have it disclosed at a time when negotiations are in the works. [Emphasis added.[5]]

In his testimony Hutt referred to "a consultant's report" prepared by MDC which he said had been hired to evaluate Blake's progress and to make recommendations as to whether Blake's delay claims and claims for extras were reasonable.

On the present record, OAS File No. 26 cannot be suppressed in its entirety. The County claims a work product privilege only for part of the file, but that part is unspecified. While the County claims a public interest protects the entire file, we have shown in Part I–C that a public interest argument in and of itself is insufficient unless the custodian successfully brings a timely action under § 3(e) of the

---

**5.** CPM stands for "critical path method," a system for determining progress of the project.

Md.Act to obtain court approval of nondisclosure for a public interest reason which does not qualify under the specific exemptions.

■ Petitioners contend that the County must disclose reports from MDC because they are routinely discoverable. MD.R. 2–402(c), which recognizes the work product privilege and which establishes, *inter alia,* a substantial need test for production, excepts the provisions of MD.R. 2–402(e). Subsection (1) of § (e) deals with discovery of the findings and opinions of experts whom a party "expects to call as an expert witness at trial" and provides, *inter alia,* that without the showing required under Rule 2–402(c) a party may be required by interrogatories "to produce any written report made by the expert concerning those findings and opinions ...." [6] Because MDC was hired by the County in anticipation of litigation and because part of the performance promised by MDC is for its employees to testify as experts, if required, Petitioners say that reports from MDC are routinely produceable under MD.R. 2–402(e) and cannot be exempt from production under the Md.Act on work product grounds.

A similar problem was presented to the Attorney General of Maryland when a state senator sought access to a

---

6. The full text of MD.R. 2–402(e)(1) is:

(e) Trial Preparation—Experts.—

(1) *Expected to Be Called at Trial.*—Discovery of findings and opinions of experts, otherwise discoverable under the provisions of section (a) of this Rule and acquired or developed in anticipation of litigation or for trial, may be obtained without the showing required under section (c) of this Rule only as follows: (A) A party by interrogatories may require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, to state the substance of the findings and the opinions to which the expert is expected to testify and a summary of the grounds for each opinion, and to produce any written report made by the expert concerning those findings and opinions; (B) a party may obtain further discovery, by deposition or otherwise, of the findings and opinions to which an expert is expected to testify at trial, including any written reports made by the expert concerning those findings and opinions.

consultant's report dealing with overrun claims by a contractor arising out of the construction of the Parallel Bay Bridge. In 58 Op.Att'y Gen.Md. 53, 58 (1973) the Attorney General concluded that the Maryland Transportation Authority was not required to produce the report and that it "would be discoverable, if at all, only when it is determined that a member of the Consultant will be called as a witness in any litigation which may arise out of the claim."

Subsequent events indicate that this interpretation by the Attorney General comports with the legislative intent. After somewhat extended study, *see* House Constitutional and Administrative Law Committee 1976 Report to the General Assembly of Maryland, Reports of Committees to the General Assembly of Maryland 1977 Session, 110–12, 157–67, the General Assembly made substantial amendments to the Md.Act by Ch. 1006 of the Acts of 1978. Chapter 1006 repealed and reenacted §§ 1 to 5 inclusive of Art. 76A but made no change in § 3(b)(v). Chapter 431 of the Acts of 1982 again made a number of amendments to the Md.Act, but no changes were made to § 3(b). In light of the apparent acquiescence by the General Assembly in the Attorney General's interpretation, *see Board of Examiners in Optometry v. Spitz,* 300 Md. 466, 477–478, 479 A.2d 363, 369–370 (1984) [slip op. at 15–16] and cases cited therein, we hold that the report of an expert is not routinely discoverable and thereby excluded from the § 3(b)(v) exemption of the Md.Act until the agency intends to call that expert as a witness in litigation.

In the instant matter the trial court made no finding on this point and, despite the strength of the indications that, the County intended to call MDC as an expert witness, there was no litigation pending when Judge Barrick entered judgment. Thereafter, during appellate review of this case, Blake sued the County. Inasmuch as this case must be remanded for further proceedings concerning the OAS file on MDC, the trial court can determine specifically whether one or more individuals from MDC have been designated to be called as expert witnesses at trial or whether the County

had otherwise demonstrated that it intends to call experts from MDC. If so § 3(b)(v) no longer protects MDC reports.

## B.

The County's description of the second category of documents in its memorandum is:

File 15 consists of handwritten notes of the County's project architect made during regular progress meetings with the consultant architects and general contractor[.]

Thereafter the memorandum identifies twenty-nine documents (a through cc) usually as "[p]rogress meeting," with the number of the progress meeting and its date. The memo reflects that documents g, r and w contain comments or personal opinions, but it is ambiguous whether the comments were made in the meeting or added by the author as parenthetical comments to the notes of a particular progress meeting. Category two concludes with the explanation that

[i]n addition to reasons previously cited these are all progress meetings[,] official copies of which have been made available to the plaintiff previously and that these are merely the recollections of the County's participating member at the progress meetings and do not necessarily accurately reflect what the official minutes do in fact reflect.

■ In damages-for-delay litigation between building contractor and owner, notes of a progress meeting made by a participant in the meeting are routinely discoverable. "How to" books recommend obtaining such notes through discovery, even though they are not universally recognized as objective. *See, e.g.,* M. Callahan & B. Bramble, *Discovery in Construction Litigation* § 2–3, at 28 (1983). Who said what about the job in a progress meeting is factual material and not subject to the deliberative process privilege. If, however, on remand the County is permitted to and can satisfy the trial court that the added comments in g, r and w are deliberative matter which was presented

for a decision-making purpose, the County must still explain why the comments cannot be severed from the balance of the notes.

## C.

The County's third category, headed "INTRA OFFICE MEMOS" consists of seventy-five documents. The County does not assign any general reason in this section of its October 21, 1981 memorandum for withholding the seventy-five records. Hutt's testimony which bears on some, but substantially less than all, of the documents in this category was as follows:

[T]here were several staff [architects] in the office of design and construction, more than technically assigned to be the contract monitors or the in-house architects of this project. And it was those memos of their *observations* or recommendations *or certain things* to Mr. [Kranz] and[/]or Mr. Abraham that I removed. They were not necessarily conclusions of fact, but were representations to their superiors as to things that they perceived to be going on that may be beneficial to their superiors. [Emphasis added.]

This testimony cannot support the exemption. To describe documents as being reports on matters observed and on matters perceived does not describe the documents as presenting predecisional advice to the decision maker.

Nor is the County's claim of all-pervading exemption supported by the October 21, 1981 memorandum. In general, it merely identifies a document by date, author and general subject matter. Thirty-five of the documents originated in OAS for transmittal to a superior or a collateral level person within that agency or for transmittal to some other agency of Montgomery County.[7] The descriptions give no indication that deliberative material is included in this subgroup. We set forth some typical examples.

---

7. We refer to Nos. 6, 8–10, 13–16, 20, 28–30, 35, 39–45, 47–49, 54–59, 61, 65, 68, 69 and 74–75.

8. Memorandum dated September 22, 1980 from Lance C. Lien, Engineering Technician to Frederick Kranz, Director, Office of Architectural Services Subject: PCO 341 and 342, Plywood for telephone closets—Government Center project.

. . . .

40. Memorandum dated March 28, 1979 from Fred Kranz, Director, Office of Architectural Services, to Suzanne Muncy, Intergovernmental Coordinator Executive Management Subject: County Government Center Endowment for the Arts.

. . . .

75. Memorandum dated June 12, 1975 from Frederick P. Kranz to Williard Flint, Chief, Communications Division, Subject: Chargeback of telephone calls to Capital Projects.

Other documents within OAS originate with superiors and are transmitted to staff or are simply memoranda to a file.[8] The descriptions give no indication why such a document is claimed to be exempt, particularly when it is unusual for predecisional deliberative recommendations to move down the organizational ladder. Other records in the County's third category originate outside of OAS, and even outside of the Montgomery County government, and are directed to persons in OAS or to other persons in the county government, with a copy to OAS.[9] There is no description of matter contained in these papers giving rise to an exemption. Remarkably, the County also withheld, without explanation, a letter (No. 53) written by OAS to the attorney for a property owner whose property adjoined the Government Center site. Document No. 4, a memo to the file by Kranz, is said to record discussions at a meeting with Blake. Nothing which the County has presented as to category

8. We refer to Nos. 19, 22, 24, 26, 27, 34, 36, 60, 62, 63, 67 and 73.

9. Here we refer to Nos. 11, 12, 17, 18, 21, 23, 51 and 52.

three distinguishes this document from those discussed in Part IV–B, *supra.*

Another memorandum to the file by Kranz, dated May 14, 1978 (No. 60), further illustrates our concern with the validity of the standard used by the County in sorting entire documents into the exempt pile. The description of Document 60 in part explains that it was withheld because it ·"contains completion dates which may be of benefit to claims currently in the process by the general contractor and would not be in the County's best interests to have disclosed as an admission." There is no privilege to withhold documents from routine civil discovery because they may be harmful to the client's cause.

The descriptions of the other documents in category three of the listing suggest in varying degrees the possibility of some privilege.[10] We would serve no practical purpose by specifically ruling on the sufficiency of the County's showing in support of these remaining documents in category three. During the interval between Judge Barrick's decision and a reconsideration on remand the County may have produced, or may produce, the documents in the Blake

---

**10.** Three documents, Nos. 5, 33 and 46, are described as memos from the OAS staff to the County's Chief Administrative Officer. No. 46, dated January 9, 1979, is said to provide ."him with possible recommendations concerning a claim for extras due to additional rock excavation." This is the strongest showing for exemption among all of these 75 documents. But the County does not explain why no part of the memo is severable.

Documents Nos. 1, 2 and 3 are Kranz to Abraham memos. Nos. 7, 25, 32, 37, 38 and 70–72 are from the OAS staff to superiors or to other county departments. While these documents might contain some predecisional analysis and advice, the County's description of these documents leaves that far from clear. Document No. 50 is a memorandum from OAS to the county attorney, but in its memorandum to the circuit court the County does not claim that this document falls within an attorney-client privilege. The hint of a work product privilege appears in the description of Document 64, and the possibility of a commercial confidential information privilege is discernible in the description of Document 66.

Document No. 31 would seem to be more appropriately classified with category five.

litigation. Further, simply because of the lapse of time, it may no longer be contrary to the public interest to disclose the documents so that the third element of the § 3(b)(v) privilege would no longer operate. In addition, the circuit court may decide on remand to exercise its discretion to make an *in camera* inspection, or it may decide to require a more definite explanation from the County. Either of these latter events would present the circuit court with a more particularized explanation of the exemption claimed and leave as academic our discussion of the sufficiency of the County's proof.

## D.

The fourth document category, headed "DOVE RE-PORT," describes five documents, one of which appears to duplicate another. Hutt testified that this category of documents

> is the inspection reports of James Dove. It is my under-standing that Mr. Dove is an employee in the Department of [F]acility and [S]ervices and is in fact in building engineering on the Executive Office Building. It is my understanding that he was assigned the responsibility through the construction phase to periodically make an inspection so there would be a smooth transition from the construction period into the operation period and to avoid the kind of problems that operating staff have when they don't get input into the design and[/]or the construction phase. That has occurred in other projects. These are the reports [that] he prepared for Mr. Abraham at Mr. Abraham's request.

The October 21 memorandum in general indicates that there are two reports by Dove, who was the heating, ventilating and air conditioning supervisor for OAS. The reports, at least in part, addressed problems from a mainte-nance point of view. Kranz wrote to the consulting archi-tects and to his staff about Dove's reports. That is as much as the County tells us.

From all indications these documents were generated in the ordinary course of business, would not be work product and would be routinely discoverable. *See Virginia Electric & Pow. Co. v. Sun Shipbuilding & D.D. Co.*, 68 F.R.D. 397 (E.D.Va.1975); *E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 24 F.R.D. 416, *modified,* 24 F.R.D. 435 (D.Del.1959); *Leding v. United States Rubber Co.*, 23 F.R.D. 220 (D.Mont.1959); 8 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 2024, at 198–99 (1970, Supp.1983); *Testimonial Privileges, supra,* § 2.07, at 167. By their nature building inspection reports are heavily factual, but the County makes no effort to explain why factual materials are not severable in category four documents. There is no description of any governmental decision to be made based on recommendations presented or alternatives analyzed in the Dove reports.

### E.

Under category five, "MEETINGS WITH ARCHITECTS," the County describes twenty-two documents. This category did not appear in the June 3, 1981 County response letter and was not the subject of testimony by Hutt before Judge Mitchell. The architects referred to are not identified. It is clear they are not employees of the County or of MDC. It appears they are the design architects who, we infer, had some ongoing responsibility for supervision and consultation during construction. Almost all category five documents are notes of meetings with architects. Some are simply identified as such by date. Others are described to some degree. In order to illustrate, the most complete description is of Document 7.

> March 30, 1979 Report of meeting with Government Center Architects which discusses problems with the drawings prepared by the mechanical and electrical engineers. Slowness of the engineers in resolving problems in duct work and electrical design. All of these items which are parts of change orders and the requests for an extension of time and additional costs due to delay. [*Sic.*]

If the County is relying on the work product aspect of the agency memoranda exemption, it has failed to establish that the primary purpose for preparing the category five documents was the anticipation of litigation. There is no demonstration by the County which takes these notes of meetings out of the ordinary course of the business of OAS.[11]

From the deliberative process aspect of the agency memoranda exemption, the County has failed to show what decision had to be made and by whom, or to identify what portions of which documents, if any, presented predecisional deliberative matter of a nonfactual nature.

## V.

The County has pointed to provisions of § 3 of the Md. Act, other than § 3(b)(v), as possibly recognizing privileges applicable here. These legal arguments have not been developed in the County's brief. Furthermore, they suffer from the same lack of factual record underpinning as does the § 3(b)(v) argument.

Petitioners have asked us to direct the trial judge to make an *in camera* inspection of all of the documents, but we shall leave that to the discretion of the circuit court on remand. As explained in Part II, *in camera* inspection is only one technique available to a trial judge to satisfy himself that an agency has properly applied an exemption from disclosure.

JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED.

CASE REMANDED TO THAT COURT FOR THE ENTRY OF AN ORDER VACATING THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AND REMANDING THIS CASE TO THE CIRCUIT

---

11. Records tending to show deficiencies in the drawings might be of assistance to Blake's claim for additional compensation, but that does not keep these County records from being routinely discoverable.

COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY MONTGOMERY COUNTY, MARYLAND.

COSTS IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY TO ABIDE THE RESULT.