REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1801

September Term, 2013

JAYSON AMSTER

v.

RUSHERN L. BAKER

Woodward,
Leahy,
Reed,

JJ.

Opinion by Woodward, J.

Filed: August 30, 2016

On April 19, 2012, appellant, Jayson Amster, filed a Maryland Public Information Act ("MPIA") request with Rushern L. Baker, County Executive of Prince George's County, seeking disclosure of a lease between Whole Foods and Calvert Tract, LLC ("Calvert Tract"). The Prince George's County Office of Law denied the request, informing appellant that the lease was not subject to disclosure under the MPIA.

On July 3, 2012, appellant filed a complaint in the Circuit Court for Prince George's County against the County Executive, seeking disclosure of the Whole Foods lease. Subsequently, the court granted the motion of appellee, Calvert Tract, to intervene as a defendant. The County Executive and Calvert Tract both filed motions for summary judgment on the grounds that the lease was exempt from disclosure under the MPIA's exemption for confidential commercial information.[1]

On June 4, 2013, following a motions hearing, the trial court granted the motions for summary judgment, ruling that the lease was exempt from disclosure under the MPIA. The court also dismissed the County Executive as a defendant and substituted appellee, Prince George's County ("the County"), in his place.

On appeal, appellant presents one question for our review, which we have rephrased as follows:

---

[1] The confidential commercial information exemption was located in Section 10-617(d) of the State Government Article ("SG") at the time the parties filed their briefs; however, the MPIA was re-codified thereafter in Title 4 of the General Provisions Article ("GP"). The exemption for commercial information is now found in GP § 4-335, effective October 1, 2014, without any change in the text of former SG § 10-617(d). *See Revisor's Note*, GP § 4-335. All future references in this opinion will be to GP § 4-335.

Did the circuit court err in granting summary judgment by ruling that the Whole Foods lease was exempt from disclosure under GP § 4-335(2)?

For reasons set forth below, we answer this question in the negative and affirm the judgment of the circuit court.

## BACKGROUND

Calvert Tract owns approximately thirty-six acres of land near the intersection of Baltimore Avenue (U.S. 1) and East-West Highway (Maryland Route 410) in Prince George's County. In October 2011, Calvert Tract sought a zoning change from R-55 (Single-Family Detached Residential) to MUTC (Mixed-Use Town Center) in order to develop the land into "a mix of office, commercial, and residential use." As part of the development process, Calvert Tract entered into confidential negotiations and executed a commercial lease with Whole Foods as the anchor store. Calvert Tract provided a redacted copy of the lease to the County "as part of the ongoing discussions of the development of the property."[2] County officials acknowledged the lease's existence in communications with constituents.

Appellant, a member of the Maryland bar and a Prince George's County resident,

---

[2] The Planning Board of the Maryland National Capital Park and Planning Commission approved Calvert Tract's zoning application with conditions on February 16, 2012. The County Council of Prince George's County, sitting as the District Council, approved the zoning application with conditions on July 12, 2012. Appellant concedes in his brief that the County Executive "had no legal role in the [ ] zoning case before the District Council and he was not making any decisions."

2

submitted an MPIA request to the County Executive on April 19, 2012, seeking, among other items, "[a]ny lease for a Whole Foods store . . . located in Prince George's County." The County Office of Law responded to the request on May 7, 2012, informing appellant that the lease was not subject to disclosure under the MPIA because the lease was "confidential commercial information." On July 3, 2012, appellant filed a *pro se* Complaint for Disclosure of Public Record against the County Executive in the circuit court, seeking, among other items, "a certain lease for a Whole Foods grocery store to be located in Prince George's County which is a prominent part of pending Zoning Application A-10018." Calvert Tract filed a motion to intervene, which the court granted.

Calvert Tract and the County Executive filed separate motions for summary judgment, arguing that the lease was exempt from disclosure under GP § 4-335(2), because the lease is a private document containing confidential commercial information that Calvert Tract voluntarily provided to the government and would not ordinarily release to the public. Calvert Tract attached an affidavit to its motion, which stated, among other things, that (1) Calvert Tract entered into a lease with Whole Foods to open a store at the intersection of U.S. 1 and Maryland Route 410; (2) the lease "was the product of extensive confidential negotiations"; (3) a redacted version of the lease was provided to the County with the intention of the lease remaining private;[3] (4) Calvert Tract "does not customarily publicly

---

[3] Appellant makes no argument before us, nor did he adduce any admissible evidence below, that Calvert Tract did *not* intend for the redacted version of the lease to remain

(continued...)

disclose its commercial leases"; (5) the lease contains financial information; (6) Calvert Tract

"intends to pursue negotiations with other businesses to enter into" leases at the property; and

(7) disclosure of the lease "would place Calvert [Tract] at a disadvantage when negotiating

future commercial leases for the property." Appellant filed an opposition to the motions for

summary judgment, in which he argued that summary judgment should be denied, because

the movants did not meet their burden of showing that "the document or *a severable portion*

meets all elements of exemption." (Emphasis in original).

The circuit court held a motions hearing on June 4, 2013, at which the judge ruled

from the bench that the lease was exempt from disclosure under GP § 4-335(2) and that

appellant was not entitled to an *in camera* review of the lease. The court stated the

following:

> And when I look at [4-335] I do find that it's—that it is confidential
> information and confidential financial information or a trade
> secret. . . . **[I]t's very clear, based on *Critical Mass [Energy Project*
> *v. Nuclear Regulatory Comm'n*, 975 F.2d 871 (D.C. Cir. 1992) (en
> banc), *cert. denied*, 507 U.S. 984 (1993)] **that . . . there is an**
> **exemption for confidential trade secrets, commercial or financial**
> **information** . . . . [I]n the situations with the NAACP, Governor
> Glendening, and these type of situations, these are public
> entities . . . where I am looking at the information to make the
> determination of redaction or not to redact[]. As a judge, yes, I can go
> back and forth. But it's very difficult to do an ex parte with one party
> and then report to another party. I end up being an arbitrator, and I'm
> a judge. I'm not an arbitrator . . . that is just a perilous path for a
> judge to do when it comes to confidential, financial information.

---

[3](...continued)
private.

4

> What I may think is disclosable, may not be really disclosable at all, and may be the revelation of confidential information. . . . **The law based on the [MPIA] and *Critical Mass* lea[d] me to the conclusion that this is exempted material and, therefore, I will deny the request of [appellant].**

(Emphasis added).

The court also dismissed the County Executive as a defendant and substituted the County in his place.

Appellant filed a motion to reconsider, alter, or amend, which the trial court denied. Appellant filed his timely notice of appeal on October 30, 2013.[4]

## PARTIES' CONTENTIONS

Appellant contends that the circuit court erred by ruling that the confidential commercial information exemption to the MPIA barred the lease's disclosure. According to appellant, the federal "*Critical Mass*" rule, which provides a categorical exemption from disclosure under the Freedom of Information Act ("FOIA") for information voluntarily provided to the government by private parties, "is inapposite to this case," because the County "had no need for the information in the lease." In addition, appellant claims that "Calvert Tract offered no 'proof' of the provider's custom for not disclosing all or part of the

---

[4] Appellant's MPIA application also sought the County's email correspondence regarding the Whole Foods lease, but on October 1, 2013, appellant filed a notice of partial voluntary non-suit withdrawing that request. The next day, the court issued an order closing the case statistically.

5

document," which is required to satisfy the *Critical Mass* test.[5]

Appellant further asserts that, even if the lease is exempt under the confidential commercial information exemption found in GP § 4-335(2), that exemption is not absolute. Because representatives of appellees discussed provisions of the lease in public, appellant argues that those provisions are not protected by the MPIA exemption.

Finally, appellant claims that other parts of the lease not covered by the confidential commercial information exemption should be severed and released, because "[c]ourts will no longer accept conclusory and generalized allegations of exemption." Appellant concludes that the trial court erred in exempting the lease in its entirety, without conducting an *in camera* review to determine which portions of the lease did not constitute confidential commercial information and could be disclosed.

Appellees respond that the circuit court did not err in ruling that the lease was exempt under the confidential commercial information exemption of the MPIA, because the lease (1) is commercial in nature, (2) was submitted to the government voluntarily, and (3) would not ordinarily be subject to public disclosure. According to appellees, public disclosure would allow Calvert Tract's competitors "to derive an unfair commercial advantage," and as a consequence, developers would "be dissuaded from volunteering useful information to

---

[5] Appellant also argues that the circuit court ignored "disputed material facts," but does not specify those allegedly disputed facts. As a result, this issue is not preserved. *See* Md. Rule 8-504(a)(6) (requiring a party's brief to contain argument in support of its position on each issue).

6

County officials, which will weaken the ability of County officials to make well-informed, strategic decisions and to promote economic development in the County."

Calvert Tract also asserts that, although the "*existence* of the lease" has been made public, "at no point have the contents of the lease been made public." (Emphasis in original). Calvert Tract argues that the lease "cannot be transformed into a public record simply because a redacted version has been provided to the relevant County and not disclosed further."

Furthermore, appellees claim that "segregability is not an appropriate remedy," because the circuit court does not have sufficient expertise to determine what is confidential or proprietary information in a commercial lease. The County argues that cases that call for severable, redacted portions of exempt documents all concerned "quintessential government documents" that fell under "different categories of exemptions" with different purposes, and thus do not apply to the confidential commercial information exemption. Calvert Tract claims that, if trial judges were "permitted to comb through commercial leases, then all future developers and investors in Maryland will be subject to potentially inconsistent determinations as to what elements of a lease are proprietary."

## STANDARD OF REVIEW

The Court of Appeals set out the appellate standard of review for a grant of summary judgment in *Tyler v. City of College Park*:

> Whether a circuit court's grant of summary judgment is proper
> in a particular case is a question of law, subject to a non-deferential

7

review on appeal. As such, in reviewing a grant of summary judgment, we review independently the record to determine whether the parties generated a dispute of material fact and, if not, whether the moving party was entitled to judgment as a matter of law. We review the record in the light most favorable to the non-moving party and construe any reasonable inferences that may be drawn from the well-plead facts against the moving party.

415 Md. 475, 498-99 (2010) (citations omitted). Ordinarily, we "consider only the grounds upon which the trial court relied in granting summary judgment." *Ross v. State Bd. of Elections*, 387 Md. 649, 667 (2005) (internal quotation marks omitted).

When faced with an MPIA dispute, a trial court "must interpret the [Act's] exemptions narrowly." *Fioretti v. Md. State Bd. of Dental Exam'rs*, 351 Md. 66, 77 (1998). "The Public Information Act's strong preference for public access to government documents must be considered whenever a court is applying the particular provisions of the statute." *Md. Dep't of State Police v. Md. State Conference of NAACP Branches*, 430 Md. 179, 191 (2013) ("*NAACP Branches*"). The government has the burden of sustaining its decision to deny the inspection of a public record. Md. Code (2014), § 4-362(b)(2)(i)(1) of the General Provisions Article ("GP"); *see also Fioretti*, 351 Md. at 78. Whether to conduct an *in camera* inspection of the requested documents falls within the trial court's discretion. *See Cranford v. Montgomery Cnty.*, 300 Md. 759, 779, 791 (1984).

## DISCUSSION

The General Assembly codified a general right to access to public information in the MPIA. *See* GP §§ 4-101 to -601. The Act "shall be construed in favor of allowing

8

inspection of a public record."  GP § 4-103(b); *see Kirwan v. The Diamondback*, 352 Md. 74, 81 (1998) (noting that the Act "must be liberally construed in order to effectuate the Public Information Act's broad remedial purpose" (citations and internal quotation marks omitted)).  The Court of Appeals recently noted, however, that

> [w]hile the public policy of the MPIA favors disclosure, the purpose of the Act reveals a legislative goal other than complete *carte blanche*, unrestricted disclosure of all public records.  The legislative purpose underpinning the MPIA is that "citizens of the State of Maryland be accorded wide-ranging access to public information *concerning the operation of their government*."

*Immanuel v. Comptroller of Maryland*, __ Md. __, __, No. 87, September Term 2015 (filed July 12, 2016), slip op. at 13 (emphasis in original) (citations and internal quotation marks omitted).

The Act contains three categories of exemptions to the general rule favoring disclosure.  The first category instructs the custodian to deny inspection "of a public record or any part of a public record" if inspection would be contrary to statute, regulation, case law, or court order.  GP § 4-301.  The second category contains a mandatory requirement for the custodian to "deny inspection of a public record" or any part of a public record for specific types of records, such as hospital records, adoption records, or personnel records; or records containing specific types of information, such as medical information, licensing records, trade secrets, or confidential information.  GP §§ 4-304 to -326, 4-328 to -340.  The third category gives the custodian discretion to deny inspection "if a custodian believes that inspection of a part of a public record by the applicant would be contrary to the public

9

interest." GP § 4-343. As to all exemptions, if a custodian denies an MPIA request, the custodian "shall . . . allow inspection of any part of the record that is subject to inspection and is reasonably severable." GP § 4-203(c)(3).

At issue in the instant case is a second category exemption found in GP § 4-335:

> **Trade secrets; confidential information**
> A custodian shall deny inspection of the part of a public record that contains any of the following information provided by or obtained from any person or governmental unit:
>
> (1) a trade secret;
>
> (2) confidential commercial information;
>
> (3) confidential financial information; or
>
> (4) confidential geological or geophysical information.

The Federal Freedom of Information Act ("FOIA") has an identical provision exempting disclosure for "matters that are . . . trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4) (2012) ("Exemption 4"). Like the MPIA, FOIA also requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b).

The Court of Appeals has recognized "that the purpose of the Maryland PIA is 'virtually identical' to that of the Federal FOIA and that, except where there may be some relevant differences in the two statutes, we may, and should, look to persuasive interpretations of the Federal Act." *Stromberg Metal Works, Inc. v. Univ. of Md.*, 395 Md.

10

120, 127 n.2 (2006) (citations omitted); *see also Immanuel*, slip op. at 14 ("We have recognized the utility of looking to FOIA jurisprudence in interpreting the exemptions under the MPIA."). For example, in *Stromberg*, the Court of Appeals considered its prior case law interpreting the "executive deliberative process privilege" found in GP § 4-344, as well as federal case law discussing Section 552(b)(5) of FOIA, because the MPIA provision was derived from the federal analog. *See* 395 Md. at 124-25.

In *Office of Governor v. Washington Post. Co.* ("*Washington Post*"), on the other hand, the Court of Appeals held that the MPIA applied to the Office of the Governor; in doing so, the Court distinguished federal case law construing FOIA as not applying to the Office of the President on the grounds that the statutory language at issue was different. 360 Md. 520, 532-36 (2000). Federal courts had held that FOIA did not apply to the Office of the President because that office is not an "agency," and because there was federal legislative history exempting "the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President" from the term "agency." *Id*. at 533-34 (citations omitted). In *Washington Post*, the Court of Appeals held that the MPIA *did* apply to the Office of the Governor, because, unlike FOIA, which applies only to "agency records," the MPIA subjects all "public records" to disclosure, and Maryland had no such legislative history exempting the Office of the Governor from the MPIA's reach. *Id*. at 534-36. In summary, in interpreting the MPIA, the Court of Appeals has indicated that the federal caselaw on FOIA is highly persuasive, especially where the statutory provisions are

11

identical. *See Stromberg*, 395 Md. at 127 n.2. As previously indicated, Exemption 4 of FOIA is identical to GP § 4-335.

The instant case involves a commercial lease between two private parties, not a government-generated document, and a redacted copy of such lease that was voluntarily submitted to the government. Nevertheless, the Whole Foods lease is a "public record" under GP § 4-101(h), because it was received by the government "in connection with the transaction of public business." There is no Maryland case on point that analyzes the confidential commercial information exemption as applied to a private document that was voluntarily submitted to the government.

1.

Appellees point us to *Critical Mass* and ask us to follow it. *See* 975 F.2d at 871. In *Critical Mass*, the United States Court of Appeals for the District of Columbia Circuit ("the D.C. Circuit") established the prevailing test for evaluating FOIA Exemption 4 claims for private records voluntarily submitted to the government. *Id.* Critical Mass Energy Project, a non-profit consumer organization, filed a FOIA request with the Nuclear Regulatory Commission ("NRC"), seeking copies of nuclear facility safety reports that were voluntarily submitted to the government on behalf of the Institute for Nuclear Power Operations ("INPO"), a non-profit corporation formed by operators of American nuclear power plants. *Id.* at 874. The safety reports contained "candid comments and evaluations from nuclear power plant employees," and were distributed to "the NRC pursuant to the explicit

12

understanding that they [we]re not to be disclosed to additional persons without INPO's consent." *Id*. Notwithstanding the FOIA provision requiring custodians to disclose any reasonably severable portion of the requested agency record, the D.C. Circuit held that Exemption 4 provided a blanket exemption for documents containing commercial or financial information that were voluntarily provided to a government agency and not customarily made public. *Id*. at 880; *see also* 5 U.S.C. § 552(b).

At the outset, the D.C. Circuit noted the legislative purpose of Exemption 4:

> [U]nless persons having necessary information can be assured that it will remain confidential, they may decline to cooperate with officials, and the ability of the Government to make intelligent, well informed decisions will be impaired. . . . [T]his exemption is intended to encourage individuals to provide certain kinds of confidential information to the Government.

*Critical Mass*, 975 F.2d at 873 (citations and internal quotation marks omitted). The Court pointed out that, in situations where the information is provided to the government on a voluntary basis, the government has an interest "in ensuring its continued availability," and if private parties are threatened with the risk of public disclosure of their confidential commercial information pursuant to a FOIA request, they "will, in all likelihood, refuse further cooperation" and cease providing such information to the government on a voluntary basis. *Id*. at 878.

To protect the government's "continuing ability to secure such data on a cooperative basis," the D.C. Circuit established a three-part test for a private document to be exempt from disclosure under Exemption 4: (1) the record must contain confidential commercial or

13

financial information that was (2) voluntarily provided to the government and (3) not customarily released to the public by the private party. *Id*. at 879. The D.C. Circuit stated that this test was an objective one, with the agency carrying the burden of proving the provider's custom of nondisclosure. *Id*. Applying the test, the D.C. Circuit agreed with the District Court's conclusion that the INPO safety reports contained commercial information, that the reports were provided to the NRC on a voluntary basis, and that INPO did not customarily release such information to the public. *Id.* at 880. As a result, the D.C. Circuit held that the reports were "confidential within the meaning of Exemption 4, and therefore protected from disclosure" in their entirety. *Id*. Finally, the D.C. Circuit stated its belief "that the categorical rule we announce today will greatly simplify the application of Exemption 4 in a significant number of cases." *Id*. at 877.

There is only one reported opinion in Maryland applying the confidential commercial information exemption in GP § 4-335(2), and that opinion deals with the government's own records, not private records voluntarily provided to the government. In *Washington Post*, the newspaper filed an MPIA request seeking telephone and scheduling records from the Office of the Governor and the Governor ("the Governor"). 360 Md. at 526. The Governor denied the request, claiming that the documents were exempt under various provisions of the MPIA, including the confidential commercial information exemption. *Id*. at 528-29. The Governor argued that the records "identified specific telephone calls which involved 'economic development projects,' or 'sensitive and confidential negotiations over' such economic

14

development projects, or 'confidential efforts to resolve a strike in Maryland,' or 'sensitive discussions relating to a major public transportation project,'" and thus were automatically exempt from disclosure. *Id*. at 548. The Court of Appeals disagreed, holding:

> Again, while records, memoranda, or notes of what was said during these conversations might amount to "confidential commercial information," the fact that the Governor . . . made a telephone call to a particular number is not itself, standing alone, "commercial" information. In order to so qualify, the [Governor] would need to explain, for *in camera* consideration by the court, why the record of each such allegedly sensitive telephone call, if turned over to the Post, would place the Post in the position of potentially jeopardizing government projects or negotiations at critical stages of development.

*Id*. at 549.

The facts of *Critical Mass* are similar to the instant case, because both cases concern a request for private documents not created by or concerning the government, but provided to the government on a voluntary basis by a private entity that does not customarily disclose such documents to the public. *See* 975 F.2d at 880. The instant case is distinguishable from *Washington Post*, because that case concerned an MPIA request for the governor's schedule and records of telephone calls between the governor and private parties, which are quintessential government documents, while the request here concerns the voluntary delivery to the government of a lease between private parties, which is *not a communication with or a document involving the government itself*.[6] *See* 360 Md. at 526.

---

[6] As stated above, appellant abandoned his MPIA request for all communications between the County and Calvert Tract when he filed a Notice of Partial Voluntary Non-Suit
(continued...)

15

The D.C. Circuit's rationale behind the *Critical Mass* test also applies to the instant case, because the County, like the NRC, has an interest in "its continuing ability to secure such data on a cooperative basis," and any risk of disclosure of such private commercial information would create a chilling effect where the private parties that currently volunteer such information to the government would, "in all likelihood, refuse further cooperation" to protect their business interests. 975 F.2d at 878-79. Such rationale was not present in *Washington Post*, because the information sought in that case did not include any private records provided to the Governor on a voluntary basis, but rather the government's own telephone and appointment records. *See* 360 Md. at 525.

In addition, the Office of the Attorney General of Maryland has instructed the executive branch agencies to follow *Critical Mass* in complying with the MPIA. In a manual of instruction, the Attorney General states:

> Commercial or financial information that is given to the government *voluntarily* should be considered confidential "if it is of the kind that the provider would not customarily release to the public." *Critical Mass Energy Project v. Nuclear Regulatory Commission*, 975 F.2d 871 (D.C. Cir. 1992), *cert. denied*, 507 U.S. 984 (1993). In general, the submitter of such material should be consulted *before* it is disclosed to a requester.

Office of the Attorney General, MPIA Manual 3-23 (14th ed. 2015); *see also Action Committee for Transit, Inc. v. Town of Chevy Chase*, __Md. App. __,__, No. 1204,

[6](...continued)
on October 1, 2013, thirty days before he filed his Notice of Appeal to this Court.

16

September Term 2015 (filed August __, 2016), slip op. at 17, n.20 ("Although the Manual may not rise to the dignity of a formal opinion by the Attorney General, it is nonetheless a useful, although not binding, resource for courts.").

Finally, and most importantly, Calvert Tract satisfied the three elements of the *Critical Mass* test; namely, that the record must contain confidential commercial or financial information that was (1) voluntarily provided to the government and (2) not customarily released to the public by the private party. *See* 975 F.2d at 879. First, Calvert Tract submitted an affidavit stating that the Whole Foods lease was the product of extensive confidential, commercial negotiations and contained financial information related to the lease agreement between Calvert Tract and Whole Foods. Second, Calvert Tract voluntarily submitted a redacted copy of the lease to the County. Third, Calvert Tract's affidavit stated that the lease was provided to the County with the intention of it remaining private, and that Calvert Tract "does not customarily publicly disclose its commercial leases."[7] Therefore, because the lease contains "financial or commercial information provided to the [County] on a voluntary basis," which would "customarily not be released to the public by [Calvert Tract]," we hold that the lease is confidential commercial information exempt from disclosure under GP § 4-335(2). *See id*.

2.

---

[7] Appellant never filed an affidavit disputing Calvert Tract's affidavit, and his brief does not identify any specific deficiencies in such affidavit.

17

Appellant claims that, even if the Whole Foods lease falls under the confidential commercial information exemption, that exemption does not apply in the instant case, because the lease was already a matter of public record. Although the existence of the lease is a matter of public record, we conclude that the confidential commercial information exemption still applies. We shall explain.

The MPIA's mandatory exemptions to disclosure, including the confidential commercial information exemption, do not cover information that "is already well known to the public." *Gallagher v. Office of Attorney General*, 141 Md. App. 664, 672 (2001) (internal quotation marks omitted); *see also CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1154 (D.C. Cir. 1987) ("To the extent that any data requested under FOIA are in the public domain, the submitter is unable to make any claim to confidentiality—a *sine qua non* of Exemption 4."), *cert. denied*, 485 U.S. 977 (1988). The D.C. Circuit has noted, however, that "substantial differences in level of detail can produce a difference in type of information," such that the public information is not identical to the information requested, and thus Exemption 4 still bars the release of the information requested. *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 244 F.3d 144, 152 (D.C. Cir. 2001).

The "party favoring disclosure has the burden of demonstrating that the information sought is *identical* to information already publicly available." *Id*. at 151; *see also Unidad Latina En Accion v. U.S. Dep't of Homeland Sec.*, 253 F.R.D. 44, 54 (D. Conn. 2008) (determining that "even if portions of information contained in the withheld documents were

18

otherwise known to some, the withheld documents appear to contain much information that is otherwise unknown to the public"). The U.S. Court of Appeals for the Second Circuit has cited various ways parties can meet this burden: they can (1) point to "a permanent public record of the exact portions" requested, (2) identify "a regulation that requires the disclosure of the specific information sought," or (3) show "the precise date and time that the particular conversation was recorded and the unique identification number assigned to the tape." *Inner City Press/Cmty. on the Move v. Bd. of Governors of Fed. Reserve Sys.*, 463 F.3d 239, 249 (2d Cir. 2006) (internal citations and quotation marks omitted).

In *Bowen v. U.S. Food & Drug Administration*, the U.S. Court of Appeals for the Ninth Circuit held that the requested records documenting poison tampering of consumer products were exempt under Exemptions 4 and 6, even though "a small portion of the requested materials [were] made public" through expert testimony at trial. 925 F.2d 1225, 1228 (9th Cir. 1991). The Ninth Circuit noted that, although the FDA official released "limited information" regarding cyanide-tracing techniques during his expert testimony, such disclosure mostly constituted "summaries and conclusions," but not the "detailed, technical analysis of the techniques and procedures used" that the appellant was requesting. *Id* at 1228-29.

Similarly, in *New York Civil Liberties Union v. U.S. Dep't of Homeland Sec.*, the U.S. District Court for the Southern District of New York granted the government's motion for summary judgment, because the requested information regarding a camera surveillance

19

program in lower Manhattan was not identical to the publicly available information, nor was it officially disclosed. 771 F. Supp. 2d 289, 292-93 (S.D.N.Y. 2011). The District Court noted that the information withheld "is far more specific than any information that the plaintiff has shown to be publicly available," because although it was generally known that the government used surveillance cameras and license plate readers, the specific location of those devices was not publicly known. *Id*. at 292. Furthermore, the Court determined that the appellant had "not identified any actual public disclosure" of the program, because the appellant relied only on three news stories and general knowledge, not any specific disclosure by a government official. *Id*. at 293.

Here, all parties agree that the Whole Foods lease exists, and that its existence has been made public. Appellant argues that the parties to the lease and trigger points within the lease have been made public, and therefore, these provisions are not protected by the confidential commercial information exemption. Appellant points to the following statement in a letter that the County Executive wrote to Kate Kelly, a constituent:

> In addition, **it is important to appreciate the fact that Whole Foods market has in fact signed a lease to locate to this property.** From conversation[s] I have had with the real estate brokers for this company, I believe they are committed to this location as opposed to other sites. In addition, I am not confident that their commitment to Prince George's County expands past this specific site. I strongly believe that attracting retailers of the quality of Whole Foods is important to our County. Whole Foods['s] interest in this site and in our community is a compliment to Prince George's County and an acknowledgment of the attractiveness of the County to quality retailers.

20

(Emphasis added).

Appellant also submitted an affidavit from Kelly stating that she attended a public meeting before the University Park Town Council on April 9, 2013, and that, at that meeting, the project manager for the "Cafritz Project" said:

a)  That there is a lease between Whole Foods and Cafritz and it has a "trigger date."

b)  That the lease requires that grading begin by August 2013.

c)  That the August date was tied to requirements in the lease.

d)  That the Whole Foods must open by February 2015 (i.e., 18 months from August 2013).

e)  That the project is moving toward the lease commencement date.

Viewing the facts in the light most favorable to appellant, the non-moving party, the most detailed information that was made public were the existence of a trigger date, the grading date, and the opening date. The mere fact that the lease's existence and such dates were made public does not mean that the contents of the lease should no longer be covered by the confidential commercial information exemption, because there are "substantial differences in level of detail" between what was disclosed and the information requested. *See Ctr. for Auto Safety*, 244 F.3d at 152. The existence of a trigger date, the grading date, and the opening date were disclosed in general, summarized terms, and constituted a "small portion" of the lease, not the detailed, technical, or specific information that appellant was requesting. *See Bowen*, 925 F.2d at 1228; *New York Civil Liberties Union*, 771 F. Supp. 2d

21

at 292. Appellant cannot point to a "permanent public record of the exact portions he wishes to obtain," nor is there a "regulation that requires [ ] disclosure" of the lease. *See Inner City Press*, 463 F.3d at 249.

More importantly, the grading date, the opening date, and the existence of a trigger date were disclosed by Calvert Tract, *not by the County*. For an exemption to be waived through public disclosure, the requested information must have been made public through an "official and documented disclosure." *Wolf v. Cent. Intelligence Agency*, 473 F.3d 370, 378 (D.C. Cir. 2007) (citations and internal quotation marks omitted). "[T]he mere presence of the information in the public domain is insufficient" to demonstrate official disclosure; rather, the disclosure must be "authorized or approved by a proper authority." *Wilson v. McConnell*, 501 F. Supp. 2d 545, 556, 558 (S.D.N.Y. 2007), *aff'd*, 586 F.3d 171 (2d Cir. 2009). In other words, "official disclosure occurs only when the agency responsible for protecting the information discloses it." *Id*. at 559 (concluding that a former agency employee's disclosure did not constitute official disclosure). Therefore, disclosure by a private party does not constitute official disclosure. *See Lazaridis v. U.S. Dep't of State*, 934 F. Supp. 2d 21, 35 (D.D.C. 2013) (holding that the appellant's public disclosure argument failed, because the person who disclosed information did not "have any authority to speak or act on behalf of the government").

Because Calvert Tract, not the County Executive or the County, disclosed the grading and opening dates, and the existence of a trigger date, such disclosure does not constitute a

22

valid waiver of the confidential commercial information exemption. The County had the responsibility to protect Calvert Tract's confidential commercial information, and thus only the County could waive this responsibility. The only information regarding the lease disclosed by the County Executive was its existence; such conclusory, summary disclosure does not constitute a valid waiver of the confidential commercial information exemption.[8]

3.

Finally, appellant argues that, even if the lease is exempt from disclosure on the grounds that it contains confidential commercial information, parts of the lease are severable and thus subject to disclosure. Therefore, according to appellant, the trial court erred by not conducting an *in camera* review to determine the lease's severability. We disagree.

GP § 4-203(c)(3) states that a custodian who denies the application to inspect a public record "shall . . . permit inspection of any part of the record that is subject to inspection and is reasonably severable." Similarly, FOIA provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the

---

[8] In *Center for Auto Safety v. National Highway Traffic Safety Administration*, the D.C. Circuit explored the relationship between the waiver of a FOIA exemption through public disclosure and the confidential commercial information exemption, noting that "a one time disclosure of information regarding a single model in a particular year will not likely create a genuine issue of material fact regarding the customary disclosure of multi-year, multi-model information." 244 F.3d 144, 152 (D.C. Cir. 2001). Similarly, in our case, a one-time disclosure by a Calvert Tract employee at a community meeting regarding the lease's grading date, the opening date, and the existence of a trigger date does not create a genuine issue of material fact regarding Calvert Tract's customary disclosure of its commercial leases to the public at large.

portions which are exempt under this subsection." 5 U.S.C. § 552(b). However, "[i]f the exempt materials are inextricably intertwined with the non-exempt materials, the entire document is exempt from mandatory disclosure." *Andrews v. Veterans Admin. of U.S.*, 838 F.2d 418, 422 (10th Cir.), *cert. denied*, 488 U.S. 817 (1988).

The Court of Appeals has stated that the "General Assembly did not intend for custodians broadly to claim exemptions and thereby routinely to pass to the courts the task of performing *in camera* inspections." *Cranford*, 300 Md. at 777. Trial judges have the discretion to order an *in camera* review to determine whether documents are exempt from disclosure. *Id.* at 791. The Court noted that the custodian should be able "to present a sufficiently detailed description and explanation" of the documents "without disclosing privileged information"; a *Vaughn* index is another "appropriate approach" for MPIA cases. *Id.* at 779 (explaining that a *Vaughn* index is "a sufficiently detailed description and explanation to enable the trial court to rule whether a given document, or portion thereof, is exempt without the necessity of an *in camera* inspection"); *see also Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir.1973), *cert. denied*, 415 U.S. 977 (1974). The trial judge may also "appropriately exercise its discretion by ordering more detailed affidavits." *Cranford*, 300 Md. at 780. The "ultimate standard under the [MPIA] for determining whether an *in camera* inspection is to be made is whether the trial judge believes that it is needed in order to make a responsible determination on claims of exemptions." *Id.* at 779. Factors for the trial judge to consider include (1) judicial economy, (2) the conclusory nature of the government's

24

affidavits, (3) any bad faith on the part of the government, (4) disputes regarding the contents of the document, (5) whether the government has proposed an *in camera* review, (6) the strength of the public interest in disclosure, and (7) whether the government can give a sufficiently detailed description "without revealing the very information sought to be protected." *Id*. at 779-80 (citing *Allen v. Cent. Intelligence Agency*, 636 F.2d 1287 (D.C. Cir. 1980)).

Recently, the Court of Appeals explored the interaction between the severability provision in GP § 4-203(c)(3) and the MPIA's mandatory exemptions in a case involving an MPIA request for investigative files concerning racial profiling complaints lodged against state troopers. *NAACP Branches*, 430 Md. at 182. The Maryland State Police ("MSP") denied certain categories of requested documents, claiming that they fell under the "personnel records" exemption in GP § 4-311.[9] *Id*. at 183. The trial court conducted an *in camera* review of the requested documents, at the conclusion of which the court ordered that such documents be disclosed, provided that the names and any identifying information of the state troopers and complainants be redacted. *Id*. at 184-85.

On appeal, the Court of Appeals stated that the

> plain language of §§ [4-304] and [4-203(c)(3)] authorizes redactions
> so that the applicant can receive portions of an exempt record which
> are severable and the receipt of which does not violate the substance
> of the exemption.

---

[9] SG § 10-616(i) at the time the case was published.

If a record falling within one of the Act's exemptions is redacted in accordance with § [4-203(c)(3)] and, if it is still exempt as argued by the [MSP] and held by the Court of Special Appeals, no effect whatsoever would be given to § [4-203(c)(3)]. [This] position would largely render § [4-203(c)(3)] nugatory[, but] as shown by this Court's opinions, § [4-203(c)(3)] is not nugatory.

*Id*. at 195-96 (citations and internal quotation marks omitted). As a result, the Court upheld the circuit court's order directing the disclosure of the redacted records. *Id*. at 196.

At the motions hearing in the instant case, the following colloquy occurred:

| | |
|---|---|
| [CALVERT TRACT'S ATTY]: | . . . **what [appellant] wants the Court to do is start going line by line through the lease and guessing what, in the grocery industry or in the retail industry or the development industry, what might be considered proprietary or not proprietary**. **And that's not the right thing to happen here.** Because what the case law says is also if this is the kind of document that is not typically produced and it was–and not typically made public, then it is not made public. And if it gets out—**if it becomes the policy of the Court that every time somebody provides confidential documents with relates—relating to economic development that the [appellants] of the world can file one of these and then every single document you provide to the county, the Court's going to go over line by line and decide what we're going to make public and what we're not, nobody's going to provide any documents to the county.** Your Honor, this doesn't happen anywhere else. You know, in Montgomery County they have |

26

developers come in all the time and make various sophisticated presentations because they know they're protected under the MPIA. All over the country this happens. And the reason is **the county has to have the ability—that's why this exception was put in the [MPIA]—so that the county would have the ability to come in and have confidential conversations with investors.**

\*\*\*

THE COURT:            . . . the critical question I guess I have to ask you is this, is why shouldn't I look at it? I mean I know, and we all know my history, sometimes good, sometimes bad with developers, as a judge, as a public official. That's reality. Life—I'm scarred a little bit with that. **But why shouldn't I as a judge look at the lease and take the black pen out or whatever pen and redact?**

\*\*\*

[CALVERT TRACT'S ATTY]:            **No, and for three reasons, Your Honor. The first reason is that *Critical Mass* says, you don't have to. And that in fact if it is the kind of document that is not typically made public, then the Court does not have to do it.** It clearly falls within that category. A commercial lease is the kind of document that is not made public. So the idea of taking a document, the very nature of which is confidential, and trying to create public parts of that document when no part of these documents are ever made public.

27

This is not a case where people go out and show parts of the commercial lease in public. **The entirety of these documents are always confidential.** This is not something where you can say, well, paragraph 14A or 14B really is a public document that typically is made public. **There is no part of a commercial lease that is ever made public. Everyone knows that. That's a part of the industry standard here. . . . Number two is this. In this particular case, and with all due respect to the Court, the Court is not an expert on what is confidential and proprietary, either in the retail industry or the grocery industry.**

\*\*\*

I want to give the Court an example. Just one example which I think illustrates this. I have the highest respect for this Court's ability, but **[appellant] just said, well, we're entitled to know who the signatory is.** It may be a very logical thing for a judge to think, well, you know what, what's wrong with him just having who the signatory is, or the start date? **Those are highly proprietary. But the Court sitting in camera, in the chambers, looking at that with a magic marker would have no way of . . . understanding the proprietary nature of who the signatory is or what the start date is**, just to give two examples. . . .

THE COURT: **So you're saying I could make a critical error.**

28

| | |
|---|---|
| [CALVERT TRACT'S ATTY]: | **Absolutely.** |
| THE COURT: | And not—and it would be—**it would be unknown to me whether I'm making a right call or wrong call because I simply don't have enough information**. |
| [CALVERT TRACT'S ATTY]: | **Absolutely. And that's why *Critical Mass* exempts these documents in their entirety.** |

***

| | |
|---|---|
| [CALVERT TRACT'S ATTY]: | . . . . And that brings us to issue number three. What [appellant] is really trying to start here is a new exception to the MPIA and a new sort of additional step of the development process across the street. Because **what will happen in every case, if he is successful in getting the Court to do a line by line review of this lease, is that [the County] is going to have to tell all these developers and investors, you know, I'd like to see the lease or part of the lease or a redacted version, but if I do, I can't guarantee you that it's going to remain confidential because someone like [appellant is] going to file an MPIA request. And one of the 19 or 20 circuit judges across the street are going to do a line by line review and they might not all be consistent and they might have all the same thing, so I can't guarantee we can protect the confidential nature of this. And so what the investors are going to say is, we're not going to show you anything because we can't trust what is going** |

29

> **to—that our confidential proprietary corporate information is going to be protected or not.** That's why it's a very simple matter for the Court to follow *Critical Mass* here and say, of course you can't have the corporate lease here, of course it's proprietary, of course it's confidential corporate information and of course as *Critical Mass* says, this is the type of information that's never made public.

(Emphasis added).

During the above colloquy, the trial court also observed that "[a]s an analytical person who's trained in the law, I may not know that certain things are trade secrets or differences when I look at a lease," and asked appellant, "what vests me any better than anybody to know whether it's a trade secret, whether it's confidential information or not[?]  That's a difficulty I have."  In denying appellant's request for *in camera* review, the court stated:

> I go down a path that I—that is just a perilous path for a judge to do when it comes to confidential, financial information.  What I may think is disclosable, may not be really disclosable at all, and may be the revelation of confidential information.  And I don't have that—that mechanism.  I have the ability, as [appellant] says, to do that.  But it is a perilous situation.

We agree with the trial court that *in camera* review is not appropriate for the Whole Foods lease.  The purpose of the confidential commercial information exemption, as applied to private records voluntarily submitted to the government, is "to encourage individuals to provide certain kinds of confidential information to the Government," and public disclosure of the lease in question would impair the government's ability to get this necessary

30

information in the future, because private developers would cease sharing their private leases with the County if doing so would subject the leases to disclosure, or *the possibility of disclosure*, under the MPIA. *See Critical Mass*, 975 F.2d at 873. In the instant case, Calvert Tract noted in its affidavit that it "does not customarily publicly disclose its commercial leases," that it "intends to pursue negotiations with other businesses" to enter into leases at the property, and that disclosure of the Whole Foods Lease "would place Calvert [Tract] at a disadvantage when negotiating future commercial leases for the property." Therefore, if we were to rule that portions of the Whole Foods lease may be severable, and thus *in camera* review is required, it logically follows that Calvert Tract and other commercial developers would cease voluntarily providing their leases to the County to avoid any risk of disclosure. This chilling effect would contravene the legislature's intent to encourage private parties to voluntarily share the information that the government does not have a mechanism to compel. *See id* at 878.

The case *sub judice* is distinguishable from *Washington Post*, where a more detailed review of the requested documents was necessary to determine whether a mandatory exemption applied to the entirety of the documents requested. *See* 360 Md. at 549. In that case, an *in camera* review was needed for the government to explain "why the record of each such allegedly sensitive telephone call, if turned over to the Post, would place the Post in the position of potentially jeopardizing government projects or negotiations at critical stages of development." *Id.* Conversely, in the instant case, Calvert Tract (1) identified the *single*

document in question as a lease between Calvert Tract and Whole Foods; (2) sufficiently described the contents of typical commercial leases like the one in question as containing confidential commercial and proprietary information regarding, among other items, the start and penalty dates, the penalties, the contracting parties and guarantors, the required and excluded ancillary uses and fees, and the nature of guarantees; and (3) adequately explained how disclosure of the lease would jeopardize Calvert Tract's commercial interests, which would deter Calvert Tract from sharing commercial leases with the County going forward. As a result of Calvert Tract's detailed information regarding the identity of the single document in question and what is typically contained in such a document, the trial court could properly determine the applicability of the confidential commercial information exemption. Unlike in *Washington Post*, the trial court here had sufficient information in front of it to consider whether severability was appropriate, and the court *did* consider and decide that no portion of the requested document was severable. *See* 360 Md. at 520.

In *NAACP Branches*, the Court of Appeals stated that a requesting party "can receive portions of an exempt record which are severable and the receipt of which *does not violate the substance of the exemption*." 430 Md. at 195 (emphasis added). As stated above, the substance of the confidential commercial information exemption is to encourage private parties to share information voluntarily with the government. Here, where a lease between private parties was never supposed to be made public, severing portions of such lease and publicly disclosing the same would violate that substance, because it would create a chilling

32

effect on commercial developers' willingness to voluntarily provide their leases to the County. As a result, the County's "continuing ability to secure such data on a cooperative basis" would be thwarted. *See Critical Mass*, 975 F.2d at 879. To protect the government's interest in "encouraging cooperation with the Government by persons having information useful to officials," we hold that, once a trial court determines that the confidential commercial information exemption applies to a document under the *Critical Mass* test, that document is exempt from disclosure in its entirety.[10] *See id.* at 878. Accordingly, the trial court did not abuse its discretion by denying an *in camera* review of the Whole Foods lease.

> **JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED; APPELLANT TO PAY COSTS.**

---

[10] Our holding is consistent with the State Finance and Procurement Article, which prevents the executive branch from disclosing information provided to it from third parties in procurement contracts. *See* Md. Code (1985, 2009 Repl. Vol.), § 13-202(a) of the State Finance & Procurement Article ("After a solicitation is issued and until a recommendation is made by a procurement officer, a procurement officer may disclose to a person outside the Executive Department only: (1) whether a decision has been made regarding a solicitation; and (2) information that is available to the public under [the MPIA]."). In the federal context, procurement contracts that contain information covered by Exemption 4 are also exempt from disclosure in their entirety. *See, e.g.*, *Envtl. Tech., Inc. v. U.S. Envtl. Prot. Agency*, 822 F. Supp. 1226, 1229 (E.D. Va. 1993).