10 A.3d 754

**Robert Lamont IRELAND**

v.

**Bobby SHEARIN.**

**No. 26, Sept. Term, 2010.**

Court of Appeals of Maryland.

Dec. 20, 2010.

**402**

Monisha Cherayil (Public Justice Center, Baltimore, MD), on brief, for appellant.

Michael O. Doyle, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Stuart M. Nathan, Asst. Atty. Gen., Baltimore, MD), on brief, for appellee.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS, and BARBERA, JJ.

ADKINS, J.

We are called upon to decide whether an official custodian of records violates Maryland's Public Information Act ("PIA") by directing an applicant to resubmit document requests to the actual custodians within individual departments of the official's agency. Appellant Robert Lamont Ireland, an inmate at the North Branch Correctional Institution ("NBCI"), submitted a request under the PIA to the office of Warden

John Rowley. Upon receipt of this request, Rowley directed Ireland to request records from the individual departments rather than the warden himself. Ireland filed a complaint alleging that Rowley violated his duties as the custodian of records for the NBCI under the PIA and seeking damages. The Circuit Court dismissed this complaint and Ireland timely appealed. On our own initiative, we issued a writ of certiorari to consider the following question:

> Did the trial court err in dismissing [Ireland's] complaint seeking to enforce his right to inspect records under the Maryland Public Information Act?

We hold that the warden's decision to direct an applicant requesting public records to make a second request to a department within his agency constitutes an improper denial under the provisions of the PIA.

## BACKGROUND AND PROCEDURAL HISTORY

On November 10, 2008, inmate Ireland sent a letter to Warden Rowley [1] requesting the disclosure of certain public records maintained at NBCI. Specifically, Ireland requested four categories of documents. First, he sought Correctional Medical Services Contract Records, including documents describing the name and number of healthcare providers at NBCI, the cost and availability of medical services, and any complaints from prisoners against NBCI healthcare providers. Second, he requested records of the Inmate Welfare Fund,[2] including documents describing the officials who manage the fund and any investments or expenditures made. Third, he

---

1.  Bobby Shearin, the named defendant/appellee in this case, succeeded Rowley as warden of the North Branch Correctional Institute on March 11, 2009.

2.  Each State correctional facility must establish an "Inmate Welfare Fund" that "may be used only for goods and services that benefit the general inmate population[.]" Md.Code (1999, 2008 Repl.Vol.), § 10–502 of the Correctional Services ("CS") Article. Each fund consists of "profits derived from the sale of goods through the commissary operation and telephone and vending machine commissions" as well as "money received from other sources." CS § 10–503.

sought Institutional Operations Records such as documents relating to security restrictions, security violations, and complaints from inmates about their conditions of confinement. Finally, Ireland requested Copying Card Records, including documents related to the cost of making copies, sales of cards to inmates, and inmate complaints about the availability of the cards.

Eleven days after Ireland sent his letter to Rowley, the warden's secretary, Brenda Marvin, issued a response letter, directing Ireland to make separate requests to each department:

> Your request has been reviewed; however, the information in [sic] which you have requested is not kept on file in the Warden's Office. Each department is responsible for maintaining files that are related to that particular department. Please direct your request to each department in which the request is relevant. Example, issues pertaining to money affairs should be directed to the Business Office, issues pertaining to ARP's should be directed to the ARP Office, medical concerns and issues should be directed to the Medical Department, etc. . . . In an effort to help minimize the time for you to receive a response from the Warden, please direct your requests directly to the department in which the issue is relevant.

Approximately another month and a half passed following Marvin's letter, and Ireland still had yet to receive any documents from the Warden's Office.

Rowley's failure to produce the requested documents prompted Ireland to file a *pro se* complaint in the Circuit Court for Allegany County, alleging that Rowley improperly denied his request under the PIA. Ireland also requested damages, including punitive damages for each denial. Appellee Bobby Shearin, Rowley's successor at NBCI, moved to dismiss Ireland's complaint. Shearin argued that Rowley had not withheld disclosure in violation of the PIA and could not have denied Ireland's request because the requested documents were not maintained by the Warden's Office, but rather

were housed in other NBCI departments. The Circuit Court granted Shearin's motion without opinion, and Ireland filed a timely notice of appeal in the Court of Special Appeals. Before argument in that Court, we issued a *sua sponte* writ of certiorari to hear the case.

## DISCUSSION

### I. Standard of Review

In reviewing a trial court's dismissal, the appellate court must presume the truth of all well-pleaded facts and any reasonable inferences deriving from them. *See Fioretti v. Md. State Bd. of Dental Exam'rs,* 351 Md. 66, 72, 716 A.2d 258, 261 (1998). Proper review requires a determination of whether the trial court was legally correct. *See Nesbit v. Gov't Employees Ins. Co.,* 382 Md. 65, 72, 854 A.2d 879, 883 (2004). As such, we review the trial court's legal conclusions *de novo. See Id.*

### II. Mootness

Shearin argues that Ireland's case is moot because the Division of Correction has since permitted Ireland to inspect all requested documents, except those exempt from disclosure by law. Shearin contends that, because Ireland no longer suffers from a lack of access, any discussion of an improper denial is fruitless.

"Ordinarily, courts will not decide moot or abstract questions, or render advisory opinions." *Creveling v. Gov't Emples. Ins. Co.,* 376 Md. 72, 83 n. 3, 828 A.2d 229, 235 n. 3 (2003). A case is moot when "there is no longer an existing controversy between the parties at the time it is before the court so that the court cannot provide an effective remedy." *Hammen v. Balt. County Police Dep't,* 373 Md. 440, 449, 818 A.2d 1125, 1131 (2003) (citations omitted). When our decision would have no effect on the case before us, "we generally dismiss [such actions as moot] without a decision on the merits." *Id.* at 450, 818 A.2d at 1131.

Here, we do not see how this case can be moot when Ireland maintains the right to challenge the adequacy of this later production (although not part of this appeal) and claims damages under SG Sections 10–623(d)(1)[3] and 10–627(b)[4] on grounds that Rowley knowingly and willfully failed to disclose the public records which Ireland was entitled to inspect.[5] Accordingly, we now turn to the substantive issue presented by this case.

### III. Ireland's PIA Request

Maryland's PIA states that a "custodian shall permit a person . . . to inspect any public record [6] at any reasonable

---

**3.** In his motion to compel disclosure of public records, Ireland actually requested, inter alia, that the Circuit Court award punitive damages in the amount of $1,000 for each PIA violation pursuant to SG Section 10–623(e)(1). That subsection, however, does not provide for monetary damages. Rather, it directs a court to notify the custodian's appointing authority if the court finds that the custodian acted arbitrarily or capriciously in withholding the public record. The appointing authority may then take any appropriate disciplinary action pursuant to Md.Code (1984, 2009 Repl.Vol.), Section 10–623(e)(2) of the State Government ("SG") Article. We believe that Ireland intended to invoke SG Section 10–623(d)(1), which assigns actual damages to a complainant "if the court finds by clear and convincing evidence that any defendant knowingly and willfully failed to disclose . . . a public record that the complainant was entitled to inspect[.]" SG § 10–623(d)(1).

**4.** SG Section 10–627 provides in relevant part: "(a) *Prohibited Acts.*—A person may not: (1) willfully or knowingly violate any provision of [the PIA] . . . (b) *Criminal Penalties.*—A person who violates any provision of this section is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $1,000."

**5.** Naturally, the appropriateness of damages depends upon whether Rowley's response was an improper denial of Ireland's PIA request. Thus, the matter is not moot. *See Clark v. O'Malley*, 186 Md.App. 194, 218, 973 A.2d 821, 835 (2009) (addressing former police commissioner's claim for damages in wrongful discharge action even though his request for reinstatement was moot).

**6.** The term "public record" means "the original or any copy of any documentary material that . . . is made by a unit or instrumentality of the State government or of a political subdivision or received by the unit or instrumentality in connection with the transaction of public business[.]" SG § 10–611(g). Here, Shearin does not contest that the documents requested by Ireland were indeed public records. Rather,

time" except as otherwise provided by law. Md.Code (1984, 2009 Repl. Vol.), § 10–613 of the State Government ("SG") Article. An individual asserts this right to access by submitting a written application to the custodian of records, unless an exception applies. *See* SG § 10–614(a)(1). The recipient of the application must verify (1) that he or she is in fact a custodian of the record, *see* SG § 10–614(a)(3), and (2) that the document in question exists, *see* SG § 10–614(a)(4). If these two requirements are met, the custodian of records must then either grant or deny the application within thirty days of receiving the initial application. *See* SG § 10–614(b). A grant of the application requires the custodian of records to produce the public record within 30 days of receipt of the application. *See* SG § 10–614(b)(2). On the other hand, a denial requires the custodian of records to immediately notify the applicant and, within ten business days, provide a written statement to the applicant giving the legal reasons for the agency's failure to disclose and advising the applicant of his or her right for review of the denial. *See* SG § 10–614(b)(3).

The PIA permits applicants to broadly seek judicial review whenever they are denied inspection of a public record by filing a complaint in the appropriate circuit court jurisdiction. *See* SG § 10–623(a). We have reiterated on numerous occasions that the PIA reflects the need for wide-ranging access to public records, and therefore, the statute should be construed in favor of disclosure for the benefit of the requesting party. *See, e.g., Hammen v. Balt. County Police Dep't,* 373 Md. 440, 457, 818 A.2d 1125, 1135 (2003) ("[T]he provisions of the [PIA] reflect the legislative intent that citizens of the State of Maryland be accorded *wide-ranging access* to public information concerning the operation of their government.") (emphasis in original); *Kirwan v. The Diamondback,* 352 Md. 74, 81, 721 A.2d 196, 199 (1998) (same); *Fioretti,* 351 Md. at 73, 716 A.2d at 262 (same); *A.S. Abell Pub. Co. v. Mezzanote,* 297 Md. 26, 32, 464 A.2d 1068, 1071 (1983) (same).

the thrust of Shearin's argument is whether Rowley's response constituted an improper denial under the PIA.

■ The PIA defines a "custodian" as someone who is the "official custodian" or "any other authorized individual who has physical custody and control of a public record." SG § 10–611(c). The "official custodian" is an "officer or employee of the State or of a political subdivision who, whether or not the officer or employee has physical custody and control of a public record, is responsible for keeping the public record." SG § 10–611(d). Here, Rowley served as warden of NBCI at the time of Ireland's request. The term "warden" falls within the definition of "managing official" in the Correctional Services Article. *See* Md.Code (1999, 2008 Repl.Vol.), § 1–101(k) of the Correctional Services ("CS") Article (defining "Managing official" as the "administrator, director, *warden,* superintendent, sheriff, or other individual responsible for the management of a correctional facility.") (emphasis added). It follows, then, that as the individual responsible for managing NBCI, and therefore maintaining records at the institution, Rowley qualified as the official custodian of records under the PIA.

As the official custodian of records, Rowley incurred the same duties and responsibilities as a physical custodian of records under the PIA. The PIA requires an applicant to submit a written application to "the custodian[,]" § 10–614(a)(1); it does not limit requests only to the physical custodian. Similarly, the definition of a custodian does not differentiate between "physical custodian" and "official custodian." *See* SG § 10–611(c). Therefore, under the Act, Rowley's status as the official custodian of records does not alter his burden to respond to information requests of the individual departments of NBCI.

Nonetheless, Shearin maintains that Rowley did not withhold information because he merely redirected Ireland to more appropriate custodians as required under Section 10–614(a)(3). *See* SG § 10–614(a)(3) ("If the individual to whom the application is submitted is not the custodian of the public record ... the individual shall give the applicant ... if known: [1] the name of the custodian; and [2] the location or possible

location of the public record.").[7]  This argument ignores the plain language of the PIA, which permits referral only if "the individual to whom the application is submitted is *not the custodian* of the public record[.]"  SG § 10–614(a)(3) (emphasis added).  Because Rowley is a custodian of the requested documents, he was not authorized to direct Ireland to other NBCI departments.  Regardless of whether collection from another department within Rowley's own agency would have been more expeditious or appropriate, the burden to collect and assemble the requested records falls squarely on the State rather than the applicant.  In short, Rowley could only grant or deny Ireland's application because of his status as the official custodian of records.

The legislative intent of the PIA only bolsters our rationale.  Like other statutes, the PIA involves a tradeoff in which state and local agencies incur additional expense for the benefit of a private right of access to government records.  The "broad remedial purpose" of the Act places a larger burden on state agencies to organize and provide access to information at the request of any individual desirous of such records.  The PIA, itself, alludes to this remedial nature when it states: "To carry out the right [of access to government records] . . . this subtitle shall be construed in favor of permitting inspection of a public record, with the least cost and least delay to the person or governmental unit that requests inspection."  SG § 10–612(b).  If we were to adopt Shearin's logic, a state agency could unduly prolong an applicant's request by continually rerouting the requesting party through each level of bureaucracy.  This would not only multiply the cost and delay of the requesting party, but it would also contradict the spirit of disclosure underlying the overall statutory scheme. *See, e.g., Hammen,* 373 Md. at 456–57, 818 A.2d at 1135 (ordering disclosure of surveillance videotapes prior to admin-

---

7.  *See also* Maryland Office of the Attorney General, Public Information Manual, Appendix F, 3(A) (revised 2008) available at http://www.oag. state.md.us/Opengov/pia.htm ("[I]f you know that another agency has the records, tell the requester;  if feasible, you may offer to forward the request to that agency.").

istrative hearing because doing otherwise would "thwart the very purpose of the [ ]PIA"). In the context of a PIA request like this one, where the circumstances require that the Court elect to place the heavier burden on either the requesting party or the government custodian of records, the intent of the General Assembly dictates that we choose the latter.

■ We do caution, however, that this burden does not obligate the custodian of records to gather the requested documents so that they will be available for inspection at a centralized location, especially if doing so would "interfere[ ] with official business." *Cf.* SG § 10–613(b) (additional rules necessary to "protect public records and to prevent unnecessary interference with official business"). Rather, the PIA directs each official custodian to "adopt reasonable rules or regulations that . . . govern timely production and inspection of a public record." Accordingly, the Secretary of the Department of Public Safety and Correctional Services has issued the following guidelines:

[ ]Time of Inspection. A custodian shall make a public record available for inspection or copying during the agency's normal working day.

[ ]Place of Inspection. A custodian shall require that the public record be inspected or copied *at the location where the public record is maintained,* unless the custodian determines that another location would better serve the needs of the individual inspecting or copying the public record or of the Department.

Md.Code Regs. 12.11.02.06(B)-(C) (2010) (emphasis added). Here, Rowley would have complied with the PIA if he had timely directed his subordinate departments to produce the requested records for inspection rather than directing Ireland to resubmit his request to those entities. Understanding that Ireland was incarcerated, Rowley was also at liberty to mail copies of the requested records at Ireland's expense. *See* Md.Code Regs. 12.11.02.06(E)(3)(e) (2010) ("If a copy . . . of a public record is mailed or delivered to the applicant, [the

official custodian shall charge] for the actual cost of postage or delivery[.]").[8]

## CONCLUSION

We hold that Rowley improperly denied Ireland's PIA request for documents by directing Ireland to other departments within NBCI. In doing so, he violated the PIA's overarching policy of providing access with the least cost and delay to the requesting party. Thus, we remand the case to the Circuit Court to determine, by clear and convincing evidence, whether Rowley "knowingly and willfully failed to disclose a public record that [Ireland] was entitled to inspect" and, if so, to determine the amount of Ireland's damages, if any.[9] *See* SG § 10–623(d).

---

8. Such responses have been held to be compliant by other states with similar public access statutes. For instance, Washington's appellate court approved a correctional facility's decision to mail the requested records to an inmate, at a charge payable in advance, rather than permit the inmate to personally inspect the records at no cost. *See Sappenfield v. Dep't of Corrections*, 127 Wash.App. 83, 110 P.3d 808, 809 (2005). The court reasoned that "nothing in [its public disclosure act] require[d] the agency to bring the records to any requester" and, moreover, that the department was "statutorily required to adopt procedures that protect the integrity of its records and also avoid interference with [its] essential function to securely restrain criminal offenders." *Id.* at 811. *See* Wash. Rev.Code § 42.56.070(1) ("Each agency ... shall make available for public inspection and copying all public records[.]"); Wash. Rev.Code § 42.56.100 ("Agencies shall adopt and enforce reasonable rules and regulations ... to prevent excessive interference with other essential functions of the agency[.]"). This same rationale was applied in another inmate access case, in which Indiana's appellate court held that a correctional facility did not err in providing an inmate with a summary of the requested information when an in-person inspection was unreasonable and he had not paid the statutory copying fee. *See Smith v. State*, 873 N.E.2d 197, 201 (Ind.Ct.App. 2007). There, the court relied upon the implicit practicality of the statute and explained the inmate's status as a prisoner greatly frustrated his right to inspect records. *See id.; see also* Ind.Code § 5–14–3–3 (2010) ("Any person may inspect and copy the public records of any public agency during the regular business hours of the agency[.]").

9. Ireland, in his brief, asserts that some documents are still being improperly withheld from him. Nothing in this decision prevents Shearin from raising any defenses to this assertion that are permitted by the PIA, such as the defense that the burden of producing those

JUDGMENT OF THE CIRCUIT COURT FOR ALLEGA-
NY COUNTY VACATED.  CASE REMANDED TO THAT
COURT FOR FURTHER PROCEEDINGS CONSISTENT
WITH THIS OPINION.  COSTS TO BE PAID BY APPEL-
LEE.

documents is so onerous as to cause a substantial injury to the public
interest.  *See* SG § 10–619 (permitting the custodian to temporarily
deny the request if he or she believes that inspection would cause
substantial injury to the public interest).  Federal courts, interpreting
the federal Freedom of Information Act ("FOIA"), a law with a purpose
"virtually identical" to the PIA, *see Police Patrol Sec. Sys. v. Prince
George's County,* 378 Md. 702, 722 n. 8, 838 A.2d 1191, 1203 n. 8
(2003), have held that the applicant's burdensome FOIA request is a
consideration when determining "unusual circumstances" that allow
the agency to extend normal response deadlines, *see Sierra Club v.
United States Dep't of Interior,* 384 F.Supp.2d 1, 31–32 (D.D.C.2004).
The FOIA requires federal agencies to make reasonable efforts to search
for records, except when "such efforts would significantly interfere with
the operation of the agency's automated information system." *See* 5
U.S.C. § 552(a)(3)(C) (2010).