*Jayson Amster v. Rushern L. Baker, County Executive for Prince George's County et al.*
No. 63, September Term, 2016, Opinion by Adkins, J.

**MARYLAND PUBLIC INFORMATION ACT — MARYLAND CODE (1957, 2014 REPL. VOL.), § 4-335 OF THE GENERAL PROVISIONS ARTICLE — CONFIDENTIAL COMMERCIAL INFORMATION EXEMPTION:** Petitioner seeks access to a commercial lease voluntarily provided to Prince George's County. To determine whether commercial information voluntarily provided to the government falls within the Maryland Public Information Act ("the MPIA") confidential commercial information exemption, we adopt the test set forth in *Critical Mass Energy Project v. Nuclear Regulatory Commission*, 975 F.2d 871 (D.C. Cir. 1992), and inquire whether the information is customarily released to the public by the person volunteering it. In applying the *Critical Mass* test, the trial court failed to gather sufficient information regarding the contents of the lease to determine whether any severable portions were disclosable under the MPIA. Therefore, we remand for the trial court to make further factual findings.

Circuit Court for Prince George's County
Case No.: CAL 12-19598
Argued: March 3, 2017

IN THE COURT OF APPEALS

OF MARYLAND

No. 63

September Term, 2016

JAYSON AMSTER

v.

RUSHERN L. BAKER, COUNTY EXECUTIVE
FOR PRINCE GEORGE'S COUNTY et al.

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

Opinion by Adkins, J.

Filed: May 22, 2017

Statutory access to commercial information contained in public records requires courts to strike a balance between government transparency and the protection of private commercial interests. Petitioner Jayson Amster seeks access to a lease between Respondent Calvert Tract, LLC ("Calvert Tract") and the grocery store Whole Foods, which was voluntarily provided to Respondent Prince George's County ("the County") while Calvert Tract's zoning application was pending. This case presents the question of how a trial court should determine whether portions of a public document fall within the confidential commercial information exemption to the Maryland Public Information Act ("the MPIA" or "the Act").

## FACTS AND LEGAL PROCEEDINGS

Calvert Tract owns about 36 acres of land in northern Prince George's County, near the intersection of U.S. 1 and Maryland Route 410. In October 2011, Calvert Tract submitted a zoning application to the Prince George's Planning Board of the Maryland-National Capital Park and Planning Commission ("the Planning Board") seeking to use the land for a mixed-use town center. Around the same time, Calvert Tract entered into a lease with Whole Foods for a grocery store to "anchor[ ]" the new development. Calvert Tract voluntarily provided a redacted version of the lease to Prince George's County Executive Rushern L. Baker "as part of the ongoing discussions of the development of the property." The Planning Board approved Calvert Tract's zoning application, which was then sent to the District Council for further review. The District Council approved the application in the summer of 2012.

In April 2012, Petitioner filed an MPIA request with Baker seeking access to the lease between Whole Foods and Calvert Tract. The Prince George's County Office of Law denied Petitioner's request, explaining that the lease was not subject to MPIA disclosure. In July 2012, Petitioner filed a complaint against Baker in the Circuit Court for Prince George's County seeking access to the lease.[1]

Petitioner alleged that proponents of Calvert Tract's zoning application referenced deadlines in the Whole Foods lease to urge the District Council to expedite the application process. He sought access to the lease, in part, to validate this information. Attached to his complaint, Petitioner included a letter from Baker to a citizen of the County, Kate Kelly, who had inquired about the zoning application. The letter indicated that Calvert Tract's lease with Whole Foods influenced Baker's decision to support its zoning application. Baker explained, "I strongly believe that attracting retailers of the quality of Whole Foods is important to our County." He concluded, "I am persuaded that the dialogue should be focused on how we ensure that this is a development that the community can support and how we can improve upon what has been proposed."

The court granted Calvert Tract's motion to intervene as a defendant, and both Calvert Tract and Baker filed motions for summary judgment arguing that the lease was exempt from disclosure as confidential commercial information. Calvert Tract also filed

---

[1] Petitioner also sought access to copies of (1) all communication between Respondent Calvert Tract, LLC ("Calvert Tract") and Prince George's County Executive Rushern L. Baker and (2) all communication between Baker and members of the District Council regarding Calvert Tract's zoning application. These requests are not at issue in this case.

an affidavit from its employee, Jane Cafritz, in which she stated that: (1) the Whole Foods lease was "the product of extensive confidential negotiations" between Calvert Tract and Whole Foods; (2) Calvert Tract provided a redacted copy of the lease to the County; (3) Calvert Tract "did not intend for the lease to become publicly available"; (4) "Calvert [Tract] does not customarily publicly disclose its commercial leases"; (5) "[n]either Calvert [Tract] nor Whole Foods has made the lease available to the general public"; and (6) "[d]isclosure of the Whole Foods lease would place Calvert [Tract] at a disadvantage when negotiating future commercial leases for the property."

Petitioner filed a motion opposing summary judgment and attached an affidavit from Kelly in which she testified that the project manager for the new development announced at a public meeting that the Whole Foods lease requires "grading [to] begin by August 2013" and that the store "must open by February 2015." Petitioner argued that the County could not "refuse to release to [Petitioner] what has already been made public."

At the summary judgment hearing, the trial court applied the test established in *Critical Mass Energy Project v. Nuclear Regulatory Commission*, 975 F.2d 871 (D.C. Cir. 1992), to determine what constitutes confidential commercial information under the federal Freedom of Information Act ("the FOIA"). It concluded that the lease was confidential commercial information and granted summary judgment. The court also substituted the County in as a defendant, dismissing the suit against Baker as an individual.[2] Petitioner filed a motion to reconsider the judgment and attached his own affidavit, which stated that

---

[2] It is unclear why Baker is named as a Respondent in this appeal. The Respondents before us are Prince George's County ("the County") and Calvert Tract, not Baker.

3

he heard the Whole Foods CEO reveal on the radio a lease term for a store in Detroit. The trial court denied the motion. Petitioner appealed to the Court of Special Appeals.

The Court of Special Appeals affirmed the trial court's grant of summary judgment based on the *Critical Mass* test. *Amster v. Baker*, 229 Md. App. 209, 228 (2016). The intermediate appellate court further held that the public release of certain information within the lease did not waive the confidential commercial information exemption. *Id.* at 231–32. The court explained that the contents disclosed "constituted a 'small portion' of the lease, not the detailed, technical, or specific information that appellant was requesting." *Id.* at 231 (quoting *Bowen v. U.S. Food & Drug Admin.*, 925 F.2d 1225, 1228 (9th Cir. 1991)). Additionally, the court stated that because the information was disclosed by Calvert Tract, and not by the County, the release cannot limit the County's ability to invoke the confidential commercial information exemption. *Id.* at 232. Lastly, the court concluded that MPIA disclosure of any severable portions of the lease was not appropriate because it might deter individuals from voluntarily providing commercial information to the government. *Id.* at 238–41. Petitioner appealed.

We granted *certiorari* to answer the following question:[3]

> Did the trial court err in entering summary judgment on the grounds that the Whole Foods lease was protected from disclosure under the MPIA's confidential commercial information exemption?

---

[3] We have rephrased the question presented. Petitioner Jayson Amster presented the following question in his Petition for a Writ of Certiorari:

Because we answer this question in the affirmative, we vacate the judgment of the Court of Special Appeals.

## STANDARD OF REVIEW

Petitioner appeals from the trial court's grant of summary judgment on his MPIA request. We have yet to enunciate a standard of review for summary judgment granted in MPIA cases. Under the FOIA, federal circuit courts are split on this question. Recognizing that trial courts often make factual determinations at the summary judgment stage in FOIA cases, some federal circuit courts limit their review to "whether (1) the district court had an adequate factual basis for the decision rendered and (2) whether upon this basis the decision reached is clearly erroneous." *Bowers v. U.S. Dep't of Justice*, 930 F.2d 350, 353 (4th Cir. 1991) (citation omitted); *see also Rubman v. U.S. Citizenship & Immigration Servs.*, 800 F.3d 381, 388 (7th Cir. 2015); *Sheet Metal Workers Int'l Ass'n, Local Union No. 19 v. U.S. Dep't of Veterans Affairs*, 135 F.3d 891, 896 (3d Cir. 1998). Others adhere to the traditional standard of review for summary judgment and review the district court's decision *de novo*. *See, e.g.*, *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 988–89 (9th Cir. 2016); *Bloomberg, L.P. v. Bd. of Governors of the Fed. Reserve Sys.*, 601 F.3d 143, 147 (2d Cir. 2010); *Juarez v. Dep't of Justice*, 518 F.3d 54, 58 (D.C. Cir. 2008); *Missouri ex rel. Garstand v. U.S. Dep't of Interior*, 297 F.3d 745, 749 (8th Cir. 2002).

Whether the invocation of the commercial exemption in the MPIA eliminates the statutory bias favoring disclosure, judicial over-sight of facts and efforts to facilitate access to [noncommercial] or publicly known portions?

5

The U.S. Court of Appeals for the Ninth Circuit recently departed from its past decisions applying the limited two-step review in favor of the traditional *de novo* approach. The court explained, "By definition, summary judgment may be granted only when there are no disputed issues of material fact, and thus no factfinding by the district court. Thus, where the district court has made a factual determination, summary judgment cannot be appropriate." *Animal Legal Def. Fund*, 836 F.3d at 989–90 (citation and internal quotation marks omitted). We agree. Accordingly, we review the trial court's grant of summary judgment to Respondents without deference.

## DISCUSSION

Petitioner argues that the trial court (1) erred in adopting the *Critical Mass* test to determine whether the Whole Foods lease is protected from disclosure by the MPIA's confidential commercial information exemption and (2) failed to gather sufficient information about the contents of the lease to make a determination as to whether the entire document falls within the exemption. Respondents contend that the trial court properly applied the *Critical Mass* test, and that there is no dispute of material fact as to whether the lease falls within the MPIA's confidential commercial information exemption.

### Background

The MPIA provides that "[a]ll persons are entitled to have access to information about the affairs of government and the official acts of public officials and employees." Md. Code (1957, 2014 Repl. Vol.), § 4-103(a) of the General Provisions Article ("GP").[4]

---

[4] At the time this dispute arose, the Maryland Public Information Act ("the MPIA" or "the Act") was codified as §§ 10-611–630 of the State Government Article. Effective

6

To effectuate this right, the Act allows individuals to inspect any public record, subject to various exemptions. GP § 4-201(a). The MPIA defines a "public record," in relevant part, as "the original or any copy of any documentary material that: (i) is made by a unit or an instrumentality of the State or of a political subdivision or received by the unit or instrumentality in connection with the transaction of public business." GP § 4-101(h)(1)(i). We have repeatedly explained that "the provisions of the [MPIA] reflect the legislative intent that citizens of the State of Maryland be accorded wide-ranging access to public information concerning the operation of their government." *Md. Dep't of State Police v. Md. State Conference of NAACP Branches*, 430 Md. 179, 190 (2013) (quoting *Kirwan v. The Diamondback*, 352 Md. 74, 81 (1998)); *see also Ireland v. Shearin*, 417 Md. 401, 408 (2010); *Hammen v. Balt. Cty. Police Dep't*, 373 Md. 440, 456 (2003).

Under the MPIA, government entities are required to allow inspection of public records unless the law deems them "privileged or confidential" or the inspection would be contrary to state or federal law. GP § 4-301. The MPIA also specifically provides numerous exemptions from disclosure. Some of these exemptions are mandatory—they require the agency to withhold the protected records. GP § 4-304; GP § 4-328. Others are discretionary—the agency can decide whether it would be "contrary to the public interest" to disclose the requested records. GP § 4-343.

October 1, 2014, the Act was re-codified without any substantive changes as §§ 4-101–601 of the General Provisions Article. We will reference the Act's current codification in this opinion.

7

Within these two broad categories, some records are protected in their entirety—no portion of them may be disclosed. GP § 4-304. This includes adoption records, hospital records, and welfare records. GP §§ 4-305–307. Other provisions exempt specific pieces of information and direct public officials to "deny inspection of [the] part of a public record" that contains such information. GP § 4-328; *see also* GP § 4-343. Documents that contain information that falls within these provisions may be disclosed in a redacted form, as long as the specific pieces of exempted information remain protected. *See Fioretti v. Md. State Bd. of Dental Examiners*, 351 Md. 66, 87 (1998) (explaining that part of an alleged investigatory file compiled for law enforcement purposes could be disclosed in a redacted form).

The exemption at play in this case is a mandatory exemption that protects specific pieces of information. It provides:

> A custodian shall deny inspection of **the part of** a public record that contains any of the following information provided by or obtained from any person or governmental unit:
>
> (1) a trade secret;
> (2) confidential commercial information;
> (3) confidential financial information; or
> (4) confidential geological or geophysical information.

GP § 4-335 (emphasis added). The MPIA's confidential commercial information exemption—GP § 4-335(2)—is similar to a FOIA exemption. The FOIA provides that its disclosure requirements do not apply to "matters" that are "trade secrets and commercial or financial information obtained from a person and [that is] privileged or confidential." 5 U.S.C. § 552(b)(4) (2012).

8

This case provides our first opportunity to interpret the MPIA's confidential commercial information exemption in the context of information **provided to** the government.[5] The FOIA's parallel exemption, however, has been reviewed extensively in this context by the U.S. Court of Appeals for the D.C. Circuit. *See Critical Mass*, 975 F.2d at 872 (collecting cases). In *National Parks and Conservation Ass'n v. Morton*, 498 F.2d 765 (D.C. Cir. 1974), the D.C. Circuit established a two-part test for determining whether commercial information is "confidential" and thus protected by the exemption. The court reasoned that the confidential commercial information exemption "is intended to encourage individuals to provide certain kinds of confidential information to the [g]overnment." *Id.* at 768 (citation omitted). Accordingly, the court defined commercial matter as "confidential" if disclosure of the information is likely either: "(1) to impair the [g]overnment's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained." *Id.* at 770 (footnote omitted). Applying the test to the case before it, the court reasoned that because the requested documents—records of concessions operations in national parks—were supplied to the government pursuant to statute, there was no risk that disclosure would prevent the government from obtaining the information in the future. *Id.* It then remanded for further findings on the competitive harm of disclosure. *Id.* at 770–71.

---

[5] In *Stromberg Metal Works, Inc. v. University of Maryland*, 382 Md. 151 (2004), we evaluated whether information produced by the government was exempt from disclosure as confidential commercial information. *Id.* at 167–70.

In *Critical Mass*, the D.C. Circuit again addressed the FOIA's confidential commercial information exemption, but this time regarding information that had been voluntarily provided to the government. A public interest organization sought access to operations reports provided to the Nuclear Regulatory Commission by the Institute of Nuclear Power Operations, a nonprofit corporation consisting of nuclear power plant operators. *Critical Mass*, 975 F.2d at 874. The court distinguished the case from *National Parks*, in which the government had compelled the information at issue. It reasoned that when information is given to the government voluntarily, there are different government interests at stake. *Id.* at 878. Thus, it set forth a new test for determining what constitutes "confidential" commercial information when the information is freely volunteered to the government.

First, the court acknowledged that "when information is obtained under duress, the [g]overnment's interest is in ensuring its continued reliability." *Id.* When evaluating whether such information should be disclosed under the FOIA, "the governmental impact inquiry will focus on the possible effect of disclosure on its quality." *Id.* By contrast, "when that information is volunteered, the [g]overnment's interest is in ensuring its continued availability." *Id.* It explained that if confidential information voluntarily provided to the government is disclosed, "the persons whose confidences have been betrayed will, in all likelihood, refuse further cooperation." *Id.* Accordingly, the court declined to use *National Park*'s two-part test. Instead, it adopted language from a Senate Report explaining the purpose of the exemption and held that information voluntarily

10

provided to the government is "confidential" if it "would customarily not be released to the public by the person from whom it was obtained." *Id.* at 873, 879 (citation omitted).

## The Test for Confidentiality

We have recognized that the MPIA "was to some extent modeled after the [FOIA], and the purpose of the MPIA is virtually identical to that of the FOIA." *Immanuel v. Comptroller of Md.*, 449 Md. 76, 89 (2016) (citations and internal quotation marks omitted). Thus, when interpreting the MPIA, we generally give significant weight to the federal courts' interpretation of similar FOIA provisions. *Id.*; *see also Faulk v. State's Attorney for Harford Cty.*, 299 Md. 493, 506 (1984). But here, Petitioner contends that the MPIA's confidential commercial information exemption is different from the FOIA's, and therefore we should not apply the D.C. Circuit's *Critical Mass* test. He argues that the FOIA exemption applies to entire documents, rather than information within those documents. Thus, he contends, we should direct the trial court to determine what constitutes confidential commercial information without consideration of whether the information is customarily released to the public. Petitioner's reasoning is flawed.

The FOIA's exemption for confidential commercial information applies to "matters" that fall within that category. 5 U.S.C. § 552(b). It does not apply to entire documents. Indeed, at the end of the section listing the FOIA's exemptions, the statute explains that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." *Id.* The protected information should simply be redacted. Additionally, the D.C. Circuit has explained, "The focus of the FOIA is **information, not documents**, and

11

an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977) (emphasis added). Even when an agency has established that a document contains protected information, "it must nonetheless disclose all reasonably segregable, nonexempt portions of the requested record(s)." *Judicial Watch, Inc. v. U.S. Dep't of Treasury*, 802 F. Supp. 2d 185, 206 (D.D.C. 2011) (citation omitted). Thus, both the MPIA and the FOIA only protect the specific confidential commercial information within a requested document. Neither Act protects the entirety of any document that contains such information.

The *Critical Mass* test has been widely accepted by other jurisdictions. *See, e.g., Brown v. Perez*, 835 F.3d 1223, 1231 (10th Cir. 2016) ("The first step in an Exemption Four [confidentiality] analysis is determining whether the information submitted to the government agency was given voluntarily or involuntarily." (citation omitted)); *Contract Freighters, Inc. v. Sec'y of U.S. Dep't of Transp.*, 260 F.3d 858, 862 (8th Cir. 2001) (addressing FOIA request for information compelled by the government, but noting *Critical Mass* test for information voluntarily provided); *Cozen O'Connor v. U.S. Dep't of Treasury*, 570 F. Supp. 2d 749, 777 (E.D. Pa. 2008) ("For purposes of Exemption 4, the test of confidentiality differs depending upon whether the information was required by, or was voluntarily provided to, the agency." (citing *Critical Mass*)); *Sun-Sentinel Co. v. U.S. Dep't of Homeland Sec.*, 431 F. Supp. 2d 1258, 1275 (S.D. Fla. 2006), *aff'd sub nom. News-Press v. U.S. Dep't of Homeland Sec.*, 489 F.3d 1173 (11th Cir. 2007) (noting that both parties agree that *Critical Mass* would apply if the information was voluntarily provided to

12

the government); *McDonnell Douglas Corp. v. U.S. EEOC*, 922 F. Supp. 235, 242 (E.D. Mo. 1996) (holding that information was voluntarily provided to the government, which mandated the *Critical Mass* test); *Providence Journal Co. v. Convention Ctr. Auth.*, 774 A.2d 40, 47 (R.I. 2001) (adopting the *Critical Mass* test).[6]  We note that the Office of the Maryland Attorney General has directed state agencies to interpret the confidential commercial information exemption using *Critical Mass* since it was decided.  *See* Office of the Md. Attorney Gen., Maryland Public Information Act Manual 3-23 (14th ed. 2015); Office of the Md. Attorney Gen., Public Information Act Manual 14 (6th ed. 1993).

Upon consideration of its widespread approval, we agree that the *Critical Mass* test properly balances the need to protect confidential information voluntarily provided to the government with the public interest in disclosure—under both the FOIA and the MPIA. *See Critical Mass*, 975 F.2d at 878–79.  Accordingly, we adopt the *Critical Mass* test for determining what information is "confidential" under the MPIA exemption.  Thus, we hold that commercial information is "confidential"—and therefore exempt from MPIA disclosure—if it "would customarily not be released to the public by the person from whom it was obtained." *Critical Mass*, 975 F.2d at 879.

---

[6] But see *Am. Mgmt. Servs., LLC v. Dep't of the Army*, 842 F. Supp. 2d 859, 880 (E.D. Va. 2012), *aff'd*, 703 F.3d 724 (4th Cir. 2013) ("The Fourth Circuit has not yet determined whether to adopt the *Critical Mass* modification to the *National Parks* test."); *N.Y. Pub. Interest Research Grp. v. U.S. EPA*, 249 F. Supp. 2d 327, 335 (S.D.N.Y. 2003) (rejecting *Critical Mass* because it "would result in too liberal a test for confidentiality, one controlled, not by the central purpose of FOIA, but by the submitter's internal practice").

## The Necessary Factual Inquiry

Petitioner argues that even if *Critical Mass* applies, the trial court did not conduct a thorough enough inquiry to determine whether all aspects of the lease are "confidential." He claims that the trial court should have reviewed the lease *in camera* or requested an index detailing its provisions. Respondents argue that the trial court properly applied the *Critical Mass* test. They contend that there is no dispute of material fact as to whether the lease is confidential, and therefore the court properly granted summary judgment.[7] They claim that the trial court was not required to conduct a more detailed inquiry into the contents of the lease, and it properly exercised its discretion in declining to do so.[8] We disagree with Respondents.

### *Cranford*

We conducted an in-depth analysis of a trial court's responsibility to examine public records potentially exempted from MPIA disclosure in *Cranford v. Montgomery County*, 300 Md. 759 (1984). In that case, a newspaper sought access to documents regarding the

---

[7] Respondents concede that they waived the argument that the lease is not a public record, and therefore not subject to the MPIA, because they did not assert it before the trial court.

[8] Respondents also argue that Petitioner conceded that the lease falls within the confidential commercial information exemption before the trial court. We disagree. At the summary judgment hearing, Petitioner said, "[S]imply because the lease may fall under one of the exemptions, which both [Respondents] argue, I don't dispute that. Clearly it does." But Petitioner continued, "That's the beginning. Now, we have to say, what is in this exempted document that may be released?" Although Petitioner admitted that some portions of the lease likely fall within the confidential commercial information exemption, he maintained that any nonconfidential information should be disclosed pursuant to the MPIA.

14

construction of a courthouse and government executive office building in Montgomery County. *Id.* at 762. The County withheld certain documents from disclosure under various exemptions to the MPIA, including the confidential commercial information exemption. *Id.* at 765–66. For some of the documents, the County provided general descriptions of their contents and stated which exemption applied. *Id.* at 768. In evaluating whether this was sufficient, we explained that "[t]he custodian who withholds public documents carries the burden of justifying nondisclosure." *Id.* at 771 (citation omitted); *see also* GP § 4-362(b)(2)(i) (providing that the defendant "has the burden of sustaining a decision . . . to deny inspection of a public record").

In *Cranford*, we provided two options for trial courts to evaluate whether a custodian has carried its burden to prove that the requested information falls within an MPIA exemption: (1) conduct an *in camera* review of the public records;[9] or (2) direct the custodian to provide "a sufficiently detailed description and explanation to enable the trial court to rule whether a given document, or portion thereof, is exempt." 300 Md. at 777–80. Although we acknowledged that public records should not be "routinely dumped" on trial courts for *in camera* review, we explained that in the absence of such review, the trial court should direct the custodian "to furnish such further affidavits, indices, tables, summaries, and cross references as the trial judge believes will be of help." *Id.* at 777,

---

[9] During an *in camera* review, a trial judge inspects the requested documents within his or her chambers to determine whether or not they should be disclosed. We have explained that "the court may elect to review the records alone, to conduct the review in the presence of counsel, or to permit review by counsel alone, as officers of the court, subject to such restrictions as the court requires to protect the records' confidentiality." *Zaal v. State*, 326 Md. 54, 87 (1992).

779–80. But when the custodian cannot provide a detailed description of the requested documents without revealing confidential information, "there is strong reason for conducting an *in camera* inspection." *Id.* at 780. "Because generalities and conclusory testimony that one or more exemptions apply do not satisfy the burden to explain the withholding of documents," in *Cranford* we remanded the case for the trial court to conduct further factual inquiry. *Id.* at 781; *see also Univ. Sys. of Md. v. Balt. Sun Co.*, 381 Md. 79, 106–07 (2004) (remanding for trial court to conduct *in camera* review of documents requested under the MPIA).

*Vaughn*

The D.C. Circuit has also addressed the question of how a trial court should collect sufficient information about a public record to make a determination as to confidentiality. In *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), which we discussed in *Cranford*, the court addressed the Civil Service Commission's claim that requested documents fell within various exemptions from the FOIA. *Id.* at 821–22. The court reversed the grant of summary judgment to the agency because it had only provided a single affidavit that "did not illuminate or reveal the contents of the information sought, but rather set forth in conclusory terms the [agency's] opinion that the evaluations were not subject to disclosure." *Id.* at 823. Acknowledging that the "lack of knowledge by the party seeking disclosure seriously distorts the traditional adversary nature" of our courts, the appellate court proposed that the agency "subdivide the document under consideration into manageable parts cross-referenced to the relevant portion of the [g]overnment's justification" for withholding the information. *Id.* at 824, 827. This is now known as a

16

*Vaughn* index, and it is commonly used to justify the withholding of public documents.[10]
*See, e.g.*, *Office of State Prosecutor v. Judicial Watch, Inc.*, 356 Md. 118, 121 n.1 (1999);
*Cranford*, 300 Md. at 778–79 (collecting federal cases).

When a *Vaughn* index or agency affidavits are "insufficiently detailed to permit meaningful review of exemption claims," the D.C. Circuit has "repeatedly noted that *in camera* review may be particularly appropriate." *Quiñon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996) (collecting cases); *see also Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 392–93 (D.C. Cir. 1987). In determining whether to conduct an *in camera* review, the trial court should consider the length of the requested documents, and whether the government's affidavits "merely parrot the language of the [exemption]." *Allen v. Cent. Intelligence Agency*, 636 F.2d 1287, 1298 (D.C. Cir. 1980), *overruled on other grounds by Founding Church of Scientology of Washington, D.C., Inc. v. Smith*, 721 F.2d 828 (D.C. Cir. 1983). Federal courts have emphasized, however, that "due to the *ex parte* nature of the process and the potential burden placed on the court" *in camera* review "should not be resorted to lightly." *Lane v. Dep't of Interior*, 523 F.3d 1128, 1136 (9th Cir. 2008) (citation omitted); *see, e.g.*, *Kortlander v. Bureau of Land Mgmt.*, 816 F. Supp. 2d 1001, 1009 (D. Mont. 2011) (citation omitted).

---

[10] In *Electronic Privacy Information Center v. U.S. Department of Homeland Security*, 892 F. Supp. 2d 28 (D.C. Cir. 2012), for example, the D.C. Circuit held that an agency met its burden of proof under the FOIA's confidential commercial information exemption when it provided a *Vaughn* index detailing "document-by-document and page-by-page[ ] what the contents include and why they could not be produced." *Id.* at 43.

17

Here, the trial court failed to either direct the custodian to provide a *Vaughn* index or conduct an *in camera* review to determine whether the lease contained nonconfidential information subject to disclosure. The only information provided to the trial judge regarding the contents of the lease was an affidavit from Jane Cafritz, a Calvert Tract employee, which stated that the lease "was the product of extensive confidential negotiations between Calvert [Tract] and Whole Foods," and that, "Calvert [Tract] does not customarily publicly disclose its commercial leases." Like the "generalities" we rejected in *Cranford*, this is not a sufficient description for the trial court to determine that all of the information within the lease falls within the confidential commercial information exemption. It is merely "conclusory testimony" that does not carry the County's burden to justify nondisclosure. *See Cranford*, 300 Md. at 781. Furthermore, although the exact length of the lease at issue is unknown, it is a single document that the trial court could presumably review *in camera* without an unreasonable exertion of judicial resources. *See Church of Scientology of California v. U.S. Dep't of Army*, 611 F.2d 738, 743 (9th Cir. 1979), *overruled on other grounds by Animal Legal Def. Fund*, 836 F.3d 987 (affirming the trial court's *in camera* review in part due to the "small number of documents requested, and their relative brevity").

Respondents also argue that if the trial court relies on an *in camera* review, it may disclose confidential commercial information by accident. They contend that the judge

may not know what constitutes confidential information within the lease.[11]  But the burden is on the County to explain to the trial court what information within the lease is exempt from disclosure.  The court should not be put in a position where it has to guess.  As we explained in *Cranford*, the County can provide descriptions, affidavits, a *Vaughn* index, or other materials to aid the court in teasing apart the confidential and nonconfidential information if it is concerned the judge will not be able to accurately do so otherwise.  Indeed, if the County provides sufficiently detailed information about the contents of the lease, the trial court may find *in camera* review unnecessary.

Lastly, Respondents argue that the disclosure of information within the lease would discourage others from voluntarily providing commercial information to the government.  But the *Critical Mass* test addresses precisely this point.  By asking whether the source of the information would "customarily" disclose it, the test seeks to protect the same information that the source would otherwise keep confidential.  *Critical Mass*, 975 F.2d at 879.  In adopting the *Critical Mass* test, we find that it properly balances the public interest in access to government records with the government interest in "encouraging cooperation . . . by persons having information useful to officials."  *Id.* at 878 (quoting *National Parks*, 498 F.2d at 768).  Here, Respondents have not met their burden of showing that this lease is protected in its entirety from disclosure because they have not demonstrated that Calvert

---

[11] The trial judge accepted Respondents' argument that he may not know what constitutes confidential information if he were to review the lease *in camera*.  He explained, "What I may think is disclosable, may not be really disclosable at all, and may be the revelation of confidential information."

Tract would not "customarily" disclose **any** of its contents. For this reason, summary judgment should not have been granted in favor of Respondents.

Although reaching this conclusion could end our discussion, we will examine one further issue at Petitioner's request because it will be helpful to the Circuit Court on remand.

## Public Disclosure of Lease Provisions

Petitioner argues that Calvert Tract has already disclosed certain information within the lease to the public, making that information ineligible for the confidential commercial information exemption.[12] The Court of Special Appeals held that the public release of information within the lease did not affect the MPIA analysis because the information was revealed by Calvert Tract—not the government custodian. *Amster*, 229 Md. App. at 232. Petitioner argues that this holding "create[s] an insurmountable burden on citizen[s'] access to alleged commercial information." As indicated, we address this argument to provide guidance to the trial court on remand.

We have yet to face the question of whether the government can deny access to a public record under an MPIA exemption when the information has already been publicly disclosed. Interpreting the FOIA's confidential commercial information exemption, the D.C. Circuit has held, "To the extent that any data requested under [the] FOIA are in the public domain, the submitter is unable to make any claim to confidentiality—a *sine qua*

---

[12] Respondents contend that Petitioner has only provided unsworn statements and inadmissible hearsay to support his argument that some of the information in the lease was made public. But Respondents did not raise these arguments before the trial court or the Court of Special Appeals. Thus, we decline to address them. *See* Md. Rule 8-131(a).

20

*non* of [the exemption]." *CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1154 (D.C. Cir. 1987), *cert. denied*, 485 U.S. 977 (1988). Indeed, when a source of commercial information has already revealed it to the public, it can hardly be said that the information "would customarily not be released to the public by the person from whom it was obtained." *Critical Mass*, 975 F.2d at 879; *see also Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 93 F. Supp. 2d 1, 18 (D.D.C. 2000) (analyzing whether the information has in fact been released to the public in determining whether source "customarily" does so). Thus, such information should not be withheld under the MPIA's confidential commercial information exemption.

## CONCLUSION

We hold that the trial court applied the correct test—*Critical Mass*—to determine whether commercial information is "confidential" under the MPIA's confidential commercial information exemption. Respondents did not carry their burden of proof, however, to demonstrate that the entire Whole Foods lease was confidential. Thus, we vacate the grant of summary judgment and remand the case for the judge to direct Respondents to provide a *Vaughn* index, review the lease *in camera*, or conduct other proceedings consistent with this opinion.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED. CASE REMANDED TO THAT COURT FOR THE ENTRY OF AN ORDER VACATING THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND REMANDING THE CASE TO THE CIRCUIT COURT FOR PRINCE**

21

**GEORGE'S COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY RESPONDENTS.**